Steven A. ZAMSKY;  General Partner, dba the Ponderosa of Klamath, Ltd., an Oregon limited partnership, Plaintiff–Appellant,

v.

Stafford HANSELL;  Lorin Jacobs;  Anne Squier;  John Dowers;  James F. Ross; Thomas Walsh;  Roger Hamlin;  Clyde Hamstreet, Defendants–Appellees.

No. 89–35281.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1990.

Memorandum Filed Aug. 10, 1990.

Memorandum Withdrawn May 17, 1991.

Order and Opinion Filed May 17, 1991.

Dennis H. Elliott, Elliott & Freedman, Portland, Or., for the plaintiff-appellant.

John T. Bagg, Asst. Atty. Gen., Salem, Or., for the defendants-appellees.

Before BROWNING, ALARCON and KOZINSKI, Circuit Judges.

### ORDER

The petition for rehearing is granted. The memorandum disposition, filed August 10, 1990, 911 F.2d 740, is withdrawn, and the attached per curiam opinion is filed in its place. The full court has been advised of the suggestion for en banc rehearing and no judge has requested a vote thereon. The suggestion for rehearing en banc is therefore rejected. Fed.R.App.P. 35(b).

### OPINION

PER CURIAM:

Today we address a question of immunity: Are state officials who unconstitutionally cause land to be rezoned absolutely immune from liability for the damage caused by their unlawful conduct? [1]

### Facts

The Oregon Land Conservation and Development Commission (the LCDC) has two primary functions. First, it adopts "goals" which become the mandatory state-wide planning standards with which all local land use plans must comply. Or.Rev.Stat. §§ 197.015(8), 197.040(1)(c) (1989). It also reviews the comprehensive land use plans which local governments are required to create and adopt, Or.Rev.Stat. § 197.175(2)(a), for conformity with the state-wide goals, Or.Rev.Stat. § 197.040(2)(d). A local land use plan becomes effective if and only if the LCDC "acknowledges" that it meets the state-wide goals. Or.Rev.Stat. §§ 197.015(1), 197.175(2)(c), (2)(d). If the plan does not conform with the state-wide goals, the LCDC may issue a continuance order and explain how to bring the plan into compliance. *See* Or.Rev.Stat. § 197.251(12).

Plaintiff Zamsky owns 1,950 acres of undeveloped land in Klamath County. In 1984, Klamath County rezoned his land in response to an LCDC continuance order that approved parts of Klamath County's comprehensive land use plan but required the county to rezone or make additional findings with respect to plaintiff's property.

On December 31, 1986, plaintiff filed this section 1983 action, alleging that James Ross, the Director of Land Conservation and Development, and the LCDC Commissioners violated his constitutional rights under the equal protection, due process and takings clauses. His property, he contends, was worth $3,500,000 before being rezoned, but is worth only $200,000 as rezoned pursuant to the continuance order. He also argues that because the LCDC acknowledged his proposed development in 1982, it was precluded under Oregon's Administrative Rules from reviewing his property again.

---

**1.** Contrary to the dissent's assertion, *see* dissent at 680, there is nothing misleading about this question. It's true that the district court never reached the merits of constitutional claim, but that's precisely the point:

If state officials are absolutely immune, they can't be held liable, no matter how lawful or lawless their conduct; they could single out an individual based on his race, religion or dislike of sushi, and no damages would lie. The question here *is* whether the culpable will be held accountable. After all, officials who don't violate clearly recognized rights will be entitled to qualified immunity—and will not be liable—regardless of how this case is decided.

The magistrate determined that Ross and the LCDC Commissioners were entitled to absolute immunity because they were acting in a legislative capacity. On that basis, he granted their motions for summary judgment. Zamsky appeals.

### Discussion

■ In determining whether to issue an acknowledgment order, the LCDC Commissioners were ruling on whether the county's proposed plan complied with existing regulations, namely the "goals" with which all local comprehensive plans must comply. They were not exercising independent legislative judgment. Thus, this case closely resembles *Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 580 (9th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). In *Cinevision,* the defendants monitored compliance with a contract; here the LCDC monitors compliance with LCDC goals. Monitoring compliance with established laws or regulations and offering recommendations on how compliance may be achieved is an executive function, involving "ad hoc decisionmaking" rather than "formulation of policy." *See id.* Because the LCDC Commissioners and staff member Ross acted in an executive function in suggesting or demanding changes to local plans, they are not entitled to absolute immunity. *Id.*

■ The LCDC points to that portion of *Cinevision* which notes that "the enactment of a general zoning ordinance is a legislative act" which carries absolute immunity. *Cinevision,* 745 F.2d at 577. Passing the goals which become the statewide master zoning plan is clearly a legislative act; but Zamsky didn't sue the LCDC for enacting the master plan. And while the LCDC also has a role which *might* be considered legislative—confirming local plans and thereby giving them the force of law—Zamsky didn't sue the LCDC for exercising that power either. Instead, Zamsky sued the LCDC for singling out his property and demanding that the local legislature amend its plan so as to make Zamsky's property virtually worthless. Complaint and Demand for Jury Trial 5, ¶¶ 9–10

(Dec. 31, 1986), ER 5. Thus, Zamsky challenges "an action against a specific individual enforcing the general zoning ordinance"—an executive action subject only to qualified immunity. *Id.* at 578 (citing *Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1349 (9th Cir.1982)).

■ Nor do the LCDC Commissioners act in a judicial capacity. To begin with, their proceedings often are not adversarial. *Contrast Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). Second, the LCDC Commissioners do not simply decide whether to acknowledge the plan but may explain how to bring the plan into compliance. *See* Or.Rev.Stat. § 197.251(12). Offering recommendations on how to comply with the law is an executive, not judicial function. And finally, unlike the professional administrative law judges in *Butz,* the LCDC Commissioners are not insulated from the agency that promulgates the rules to be applied. Instead, they are the same individuals who promulgate the "goals" in the first place; they combine the functions of lawmaker and monitor of compliance. Such combined functions are not uncommon at the local level, but they are inconsistent with the judicial role and judicial immunity. *See Butz,* 438 U.S. at 513–14, 98 S.Ct. at 2914 (noting the extensive mechanisms used to insulate ALJs from the agency in which they serve); *see also Wood v. Strickland,* 420 U.S. 308, 319–20, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975) (noting the combined legislative and adjudicative functions of school board members and concluding that they are not entitled to absolute immunity); *Cleavinger v. Saxner,* 474 U.S. 193, 203–04, 106 S.Ct. 496, 501–02, 88 L.Ed.2d 507 (1985) (prison disciplinary board members who also serve as prison guards not absolutely immune).

■ Finally, the LCDC argues that forcing officials to prove they're entitled to qualified immunity will deter individuals from serving on the LCDC. However, the Supreme Court has repeatedly reminded us that qualified immunity "is not of small consequence.... [I]nsubstantial lawsuits can be recognized and be quickly disposed

of, and firm application of the Federal Rules of Civil Procedure 'will ensure that federal officials are not harassed by frivolous lawsuits.'" *Cleavinger*, 474 U.S. at 206–07, 106 S.Ct. at 503, *quoting Butz v. Economou*, 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). The cost of establishing the defense of qualified immunity is simply part of the price of having a viable remedy for constitutional violations; it is not a sufficient reason, in and of itself, for finding governmental actors to be absolutely immune.

We reverse the judgment of the district court and remand for further proceedings including consideration of defendants' claims of qualified immunity.

ALARCON: Circuit Judge, dissenting:

I respectfully dissent.

### PREFATORY STATEMENT

The majority has framed the question we must resolve in this appeal as follows: "Are state officials who unconstitutionally cause land to be rezoned absolutely immune from liability for the damages caused by their conduct?" This statement of the issue is misleading. The district court did not reach the merits of Zamsky's constitutional claim. Instead, the district court held that it could not reach the merits of plaintiff's claim because the appellees were absolutely immune from damages liability.

The district court concluded that the director and the members of Oregon Land Conservation and Development Commission (the LCDC) were acting in a legislative capacity when they reviewed Klamath County's comprehensive land use plan. The majority has found that the LCDC's approval of the Klamath County comprehensive land development plan was an executive act specifically directed at Zamsky's property. The record does not support the majority's factual finding. The record shows that the LCDC ruled on Klamath County's application for approval of its comprehensive land use plan as required under Oregon law. In reviewing Klamath County's application, the LCDC exercised its legislative power to disapprove or "veto" those portions of the Klamath County comprehensive plan that did not comply with land use goals adopted by the LCDC pursuant to Oregon law. Accordingly, I would affirm the order of the district court.

### APPLICABLE OREGON LAW

Before setting forth the relevant facts in this case, I will summarize Oregon law concerning land development. In 1973, the Oregon legislature created a comprehensive land use scheme "[t]o promote coordinated administration of land uses consistent with comprehensive plans adopted throughout the state." Or.Rev.Stat. § 197.005(2) (1989). To achieve its goals, Oregon created the Land Conservation and Development Commission (LCDC). It consists of seven members appointed by the governor for four year terms. Or.Rev. Stat. § 197.030(1), (3) (1989). The LCDC directs the Director of Land Conservation and Development (Director) in the performance of his or her duties. Or.Rev.Stat. § 197.040(1)(a) (1989).

The LCDC is the primary state agency responsible for carrying out Oregon's land use scheme. *See* Or.Rev.Stat. §§ 197.040, 197.320 (1989). Oregon has delegated to the LCDC the duty of adopting "goals" that constitute "the mandatory statewide planning standards" with which all local comprehensive plans must comply. Or. Rev.Stat. §§ 197.015(8), 197.040(1), (2)(a) (1989). Under the statute, local governments must create and adopt comprehensive plans to control land use decisions within their jurisdictions. Or.Rev.Stat. §§ 197.010, 197.175 (1989). A comprehensive plan is defined as "a generalized, coordinated land use map and policy statement of the governing body of the local government that interrelates all functional and natural systems and activities relating to the use of lands...." Or.Rev.Stat. § 197.015(5) (1989).

Local governments must submit their comprehensive plans to the LCDC for "acknowledgment" review pursuant to section

197.251.[1] The LCDC must review the comprehensive plan for compliance with the goals. If the plan is consistent with the goals it is "acknowledged" under section 197.251. Once acknowledged, the plan constitutes the rules and policies by which local governments must make land use decisions. Or.Rev.Stat. § 197.175(2)(d) (1989). If the plan is not acknowledged, it does not constitute the rules for land use decisions and the LCDC's goals continue to be the rules by which local land use decisions must be made. Or.Rev.Stat. § 197.175(1), (2)(c) (1989). Thus, the LCDC functions as an integral part of the legislative process with respect to the adoption of rules and policies for land use decisions within each local jurisdiction.

When reviewing a comprehensive plan, the LCDC may issue any one of three orders: an acknowledgment order, which recognizes that the plan meets all goal requirements and gives the plan the force of law; a continuance order, which requires the local government to revise its plan within a specified time; or, a denial order. Or.Rev.Stat. § 197.251(1) (1989).

The LCDC must limit its acknowledgment orders to identified geographic areas within the comprehensive plan area if there are other specific areas within the plan that do not comply with the goals. Or.Rev.Stat. § 197.251(6) (1989). Thus, the LCDC may issue acknowledgment orders as to parts of a comprehensive plan and continuance or denial orders as to other parts. *Id.* These

orders must specifically identify the goals that were met, the goals that were not met, and the areas affected. Or.Rev.Stat. § 197.251(5), (6) (1989). The LCDC must specify amendments to the plan that would bring it into compliance. Or.Rev.Stat. § 197.251(12) (1989). The LCDC's acknowledgment, continuance, and denial orders can be appealed to the Oregon Court of Appeals. Or.Rev.Stat. § 197.650 (1989).

The specific procedure that must be followed by the LCDC in the review process is as follows: the Director of Land Conservation and Development must prepare a report for consideration by the LCDC analyzing the comprehensive plan's compliance with the goals. Or.Rev.Stat. § 197.251(2) (1989). Interested persons must be provided a reasonable opportunity to present comments and objections for the Director's consideration. *Id.* Before the Director submits the report to the LCDC, he must allow local governments and persons who submitted written comments or objections an opportunity to file written exceptions to the report. Or.Rev.Stat. § 197.251(3).

The LCDC must limit its review of the comprehensive plan to the record before the local government and Director's report, along with the exceptions, comments, and objections submitted. Oral argument before the LCDC by persons who filed written comments, objections, or exceptions may be allowed. Or.Rev.Stat. § 197.251(4) (1989).

1. The relevant portions of section 197.251 are set forth below:

    **197.251 Compliance acknowledgment; commission review; rules; limited acknowledgment planning extension; compliance schedule.**

    (1) Upon the request of a local government, the commission shall by order grant, deny or continue acknowledgment of compliance with the goals. . . .

    (2) In accordance with rules of the commission, the director shall prepare a report for the commission stating whether the comprehensive plan and land use regulations for which acknowledgment is sought are in compliance with the goals. . . .

    .    .    .    .    .

    (5) A commission order granting, denying or continuing acknowledgment shall include a

clear statement of findings which sets forth the basis for the approval, denial or continuance of acknowledgment. The findings shall:

    (a) Identify the goals with which the comprehensive plan and land use regulations comply and those with which they do not comply; and

    (b) Include a clear statement of findings in support of the determinations of compliance and noncompliance.

    (6) A commission order granting acknowledgment shall be limited to an identifiable geographic area described in the order if:

    (a) Only the identified geographic area is the subject of the acknowledgment request; or

    (b) Specific geographic areas do not comply with the goals, and the goal requirements are not technical or minor in nature.

    .    .    .    .    .

Or.Rev.Stat. § 197.251 (1989).

B. Pertinent Facts

The facts are not in dispute in this matter; neither party contests the district court's findings. This matter arises out of actions taken by the LCDC regarding Klamath County's comprehensive land use plan that resulted in a restriction in the development of Zamsky's land. Zamsky argues that the LCDC violated his constitutional rights when it concluded the proposed development of his land, pursuant to Klamath County's comprehensive land use plan, did not comply with mandatory statewide goals.

Zamsky owns 1,950 acres of undeveloped land in Klamath County. Before Klamath County adopted a comprehensive land use plan on November 25, 1981, the county had previously zoned Zamsky's property as a "Planned Unit Development" (PUD) with a building density of not more than one dwelling per five acres. Interested citizens appealed Klamath County's zoning decision to the LCDC in *Ager v. Klamath County*, LCDC Case No. 79–030. The LCDC determined that the PUD zoning violated the mandatory statewide goals because the decision was unsupported by "findings and reasons explaining compliance with the goals" and no showing was made as to why the development should be approved before the adoption of a comprehensive plan. Director's Report of January 28, 1981.

On November 25, 1981, subsequent to the LCDC's decision in *Ager v. Klamath County*, Klamath County adopted a comprehensive land development plan (the 1981 Klamath County Plan). It was submitted to the LCDC on December 2, 1981 for "acknowledgment review" pursuant to Oregon Rev.Stat. § 197.251(1). The 1981 Klamath County Plan designated Zamsky's property as "Planned Unit Development" (PUD) land and provided for a building density of no more than one dwelling per five acres. The Zamsky property was classified as "rural" except for ten acres set aside for commercial uses. The LCDC had rejected the PUD proposal in *Ager v. Klamath County*. Because Klamath County had not changed the zoning following the LCDC's ruling in *Ager v. Klamath Coun-*

*ty*, the LCDC required the County to identify additional facts and reasons to justify its decision not to comply with the earlier order. This requirement was contained in an LCDC order that granted Klamath County additional time to complete its comprehensive plan.

Pursuant to the order requiring Klamath County to justify its decision not to change the PUD zoning, the Director conducted an initial review of the 1981 Klamath County Plan to determine whether the county had complied with the LCDC's directions in *Ager v. Klamath County*. On January 28, 1982 the Director issued a report "generally assess[ing] Klamath County's response to five appeal cases [including *Ager v. Klamath County*] in which there was a serious potential for overturning [the plan] if the County's ... [1981] plan was adopted without appropriate findings and revisions." Director's Report of January 28, 1982. The report concluded that the 1981 Klamath County Plan "appear[ed] to comply with the earlier direction given by the Commission, at least to the extent that a legislative decision is expected to address the goals."

The Director's January 28, 1982 report did not purport to review the 1981 Klamath County Plan to determine whether it complied with LCDC's statewide goals. The Director's report regarding Klamath County's compliance with the mandatory land use goals was dated February 18, 1982.

On March 22, 1982, the LCDC completed its goal compliance review of the 1981 Klamath County Plan. The LCDC concluded that "Klamath County's comprehensive plan and implementing measures do not comply with the Statewide Planning Goals." The LCDC specifically adopted the findings and recommendations contained in sections IV and V of the Director's February 18, 1982, report and issued a continuance order. Sections IV and V of the Director's report detail the nature of the goal violations and the steps necessary to correct the problems. The report specifically recommended that the LCDC "deny Klamath County's request for acknowledgment." The report recommended amend-

ments to the plan's zoning maps to provide a suitable rural plan designation for certain areas. New policies and zoning were required for lands "not within adopted urban growth boundaries." In addition, the LCDC required additional findings relating to types and levels of public services that would be necessary in rural lands.

Specifically, the LCDC found that the 1981 Klamath County Plan complied with goals 1 (Citizen Involvement), 6 (Air, Water, and Land Resources Quality), 8 (Recreational Needs), 10 (Housing), and 13 (Energy Conservation), but found that the Plan did not comply with goals 2 (Land Use Planning), 3 (Agricultural Lands), 4 (Forest Lands), 5 (Open Spaces, Scenic and Historic Areas, Natural Resources), 7 (Areas Subject to Natural Disasters and Hazards), 9 (Economy of the State), 11 (Public Facilities and Services), 12 (Transportation), and 14 (Urbanization, as it related to goal 2). The continuance order specifically addressed Klamath County's proposed PUD zone and rural lands.

The LCDC recommended that amendments be adopted to the 1981 Klamath County Plan to describe the type and levels of public services and facilities necessary for the rural communities. In addition, the LCDC determined that the rural community boundaries appeared to be too large and required additional findings concerning rural boundaries. The LCDC's recommendations did not refer to any specific property; they applied generally to the rural and the proposed PUD zone areas. No reference was made to Zamsky's property. None of the areas set forth in the 1981 Klamath County Plan were "acknowledged" as being in compliance with the mandatory statewide goals.

Klamath County amended its comprehensive plan on December 21, 1982 in an attempt to bring it into compliance with the LCDC's recommendations regarding goal compliance. None of the county's amendments affected Zamsky's property. On May 16, 1983, the LCDC concluded its review of the first amended plan and issued another continuance order. The LCDC determined that the amended plan did not comply with the mandatory statewide goals. The LCDC remained concerned with the "appropriate level of sewer and water facilities" necessary for the rural communities and also required amendments with respect to proposed residential and nonresource zones. The report pointed out problems resulting from "the piecemeal designation and zoning of individual properties based totally on ownership" rather than goal compliance. Continuance Order of May 16, 1983. Zamsky's property was not specifically mentioned.

On February 16, 1984, Klamath County again amended its comprehensive land use plan in order to comply with the LCDC's recommendations. Prior to the time these amendments were made, Zamsky submitted a master development plan to the county for approval in the Fall of 1983. The County Planning Commission held hearings, but delayed making a decision. Zamsky filed a mandamus action with the Klamath County Circuit Court to compel the County Planning Commission to approve his master development plan. On March 23, 1984, that court ordered Klamath County to approve the application or show cause why it had not been approved. Klamath County approved Zamsky's application on March 30, 1984. Several County residents appealed Klamath County's approval of Zamsky's proposed development. Their appeal was dismissed for failure to prosecute on June 19, 1984. The LCDC was not a party to the proceedings.

On August 6, 1984, the LCDC concluded its review of the second set of amendments to the 1981 Klamath County Plan. None of Klamath County's amendments to the comprehensive land use plan referred to the proposed PUD zoning of Zamsky's property. In an order dated August 6, 1984, the LCDC determined that the 1981 Klamath County Plan, as amended, complied with the goals except for specific areas, including Zamsky's property, that violated goals 2 (Land Use Planning) and 14 (Urbanization). The LCDC issued an acknowledgment order solely as to those portions of the amended 1981 Klamath County Plan that complied with the goals. A continuance order was issued regarding those por-

tions that did not comply. The continuance order required Klamath County to make additional findings with respect to the portions of the comprehensive land use plan that did not comply, or to replan and rezone those properties. The continuance order specifically referred to the proposed development of Zamsky's property as requiring additional findings to demonstrate its compliance with the mandatory statewide use goals.

In response to the August 6, 1984 continuance order, Klamath County rezoned Zamsky's land to allow for one dwelling per 20 acres. Zamsky appealed the county's zoning decision to the Land Use Board of Appeals. The Board dismissed the appeal on February 8, 1985.

The LCDC reviewed the amended 1981 Klamath County Plan on May 23, 1985. It determined that the comprehensive land use plan, including the requirement that Zamsky's property be limited to one dwelling per 20 acres, complied with the mandatory statewide goals. The LCDC issued an acknowledgment order on May 31, 1985.

Zamsky appealed from the decision of the LCDC on February 24, 1986 to the Oregon Court of Appeals. In that appeal, Zamsky alleged that the LCDC acted beyond the scope of its authority in issuing its order limiting the development of his land. Zamsky expressly reserved any federal questions. The Oregon Court of Appeals affirmed the LCDC's decision without opinion. *Zamsky v. Land Conservation & Dev. Comm'n*, 80 Or.App. 461, 721 P.2d 482 (1986).

Zamsky filed this section 1983 action on December 31, 1986. He alleged that the LCDC Commissioners and Ross, LCDC's director, violated his constitutional rights under the equal protection, due process, and takings clauses. Zamsky contends that his property, which was worth $3,500,-000 under the one dwelling per five acres zoning, is now worth only $200,000. He

argues that because the LCDC had acknowledged his proposed development plan in 1982, it was precluded from again reviewing his property by Oregon Administrative Rule 660–03–025(8).[2]

## ANALYSIS

Zamsky contends that Ross and the LCDC Commissioners acted in a "classic executive administrative function" in "review[ing] city and county land use plans and zoning ordinances to determine if they are in compliance with ... [land use] goals." Appellant's Brief at 10. The record does not support this contention.

State legislators are absolutely immune from liability for damages resulting from the performance of their duties. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 403, 99 S.Ct. 1171, 1178, 59 L.Ed.2d 401 (1979); *Tenney v. Brandhove*, 341 U.S. 367, 372–75, 71 S.Ct. 783, 786–87, 95 L.Ed. 1019 (1951). Whether a state public official acts in a legislative capacity is determined by the duties that are performed, not the title bestowed on the individual. *Cleavinger v. Saxner*, 474 U.S. 193, 201, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985). In *Cleavinger*, the Supreme Court held that immunity analysis requires a functional approach that "rests on functional categories, not on the status of the defendant." *Id.* Immunity analysis focuses on the "nature or function" of the person's activities. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 678 (9th Cir.1984).

In *Lake Country Estates*, the Supreme Court concluded that members of the Tahoe Regional Planning Agency acted in a legislative capacity in adopting a land use ordinance. *Lake Country Estates*, 440 U.S. at 406, 99 S.Ct. at 1179. The Court held: "[T]o the extent the evidence discloses that these individuals were acting in a capacity comparable to that of members

---

**2.** Oregon Administrative Rule 660–03–025(8) states:

> When the Commission resumes its consideration of the acknowledgment request, submitted subsequent to a continuance order, it shall limit its review to a determination of

whether the corrections submitted bring the acknowledgment submission into conformance with the Statewide Planning Goals found not to be complied with in the previous review, unless conformance with other Goals is affected by the corrections.

of a state legislature, they are entitled to absolute immunity from federal damages liability." *Id.*

Under Oregon's Comprehensive Land Use Planning Act, the LCDC Commissioners are required to adopt, amend, and review land use goals and review comprehensive plans adopted by local governments for compliance with such goals. Or.Rev. Stat. §§ 197.040(2)(a), 197.251(1) (1989). Zamsky correctly concedes that the adoption of land use goals is "clearly a legislative function." Appellant's Brief at 9. He argues that the acknowledgment function is not legislative.

Under Oregon Law, a comprehensive land use plan adopted by a local government has no force of law until it is acknowledged by the LCDC. Or.Rev.Stat. § 197.175(2)(c), (d) (1989). Thus, in performing this duty, the LCDC's role is similar to the function of the president, or a governor in signing or vetoing a statute adopted by legislature. Without the concurrence of the president or the governor, the legislative process is not complete.

In *Edwards v. United States*, 286 U.S. 482, 52 S.Ct. 627, 76 L.Ed. 1239 (1932), the Supreme Court held that "the President's function in approving or disapproving bills" is a legislative function. *Id.* at 490 (citing *La Abra Silver Mining Co. v. United States*, 175 U.S. 423, 454, 20 S.Ct. 168, 178, 44 L.Ed. 223 (1899)); *see Buckley v. Valeo*, 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976) ("the President is a participant in the law-making process by virtue of his authority to veto bills enacted by Congress"); *see also Smiley v. Holm*, 285 U.S. 355, 373, 52 S.Ct. 397, 401, 76 L.Ed. 795 (1932) (where state law requires the governor's participation before a statute "could be put in force," such action is "a performance of the function of the legislature as a law making body.")

Zamsky argues that absolute immunity is not available to Ross and the LCDC Commissioners because they "directed that specific actions be taken with reference to Plaintiff's Property." Appellant's Brief at 10. This argument lacks merit because the LCDC function in granting acknowledg-

ment or in preventing a zoning ordinance from having any legal effect is a mandatory part of its legislative function under Oregon law. The LCDC had no authority to "put into force" Klamath County's land use plan for Zamsky's property unless it complied with the mandatory statewide goals. A similar claim was rejected in *Hernandez v. City of LaFayette*, 643 F.2d 1188 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). In *Hernandez*, as in the instant matter, the plaintiff filed a section 1983 action against the City of LaFayette and its mayor. *Id.* at 1189. He contended that the failure to rezone his land denied him of his property without due process and just compensation under the fifth and fourteenth amendments. *Id.* The plaintiff in *Hernandez* obtained a unanimous vote from the city council to rezone his land. The mayor vetoed the ordinance. *Id.* at 1190–91. In his complaint, Hernandez alleged that the city was motivated by a desire to maintain the depressed market value of his land to keep condemnation costs at a minimum. *Id.* at 1191. The district court concluded that the mayor was protected by the doctrine of absolute immunity because he acted in a legislative capacity in exercising his veto powers. *Id.* at 1191–92. The Fifth Circuit affirmed. It reasoned as follows:

> The mayor's veto, like the veto of the President or a state governor, is undeniably a part of the legislative process. It differs only in that it takes place on the local level. When the mayor exercises his veto power, it constitutes the policy-making decision of an individual elected official. It is as much an exercise of legislative decision-making as is the vote of a member of Congress, a state legislator, or a city councilman. We, therefore, hold that the district court properly dismissed plaintiff's action against the mayor because the mayor was absolutely immune from suit in connection with his vetoes of the ordinances to rezone plaintiff's land.

*Id.* at 1194.

Similarly, in the matter before this court, the record shows that when the orders

were issued by the LCDC in withholding approval of the 1981 Klamath County Plan, it was exercising its power to prevent the land use plan from having any legal effect until it met the development goals. The exercise of a "veto" power is a classic legislative function. *Buckley*, 424 U.S. at 121, 96 S.Ct. at 683. In *Edwards*, 286 U.S. at 490, 52 S.Ct. at 630, the Supreme Court held that "the President's function in approving or disapproving bills" is a legislative function.

Zamsky argues that our decisions in *Kuzinich v. County of Santa Clara*, 689 F.2d 1345 (9th Cir.1982), *Cinevision Corp. v. City of Burbank*, 745 F.2d 560 (9th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985), and *Bateson v. Geisse*, 857 F.2d 1300 (9th Cir.1988), demonstrate that the LCDC does not act in a legislative capacity when it refuses to permit a comprehensive land use plan to take effect because it declines to acknowledge a county's zoning of an individual landowner's property. The cited cases do not support this proposition. Furthermore, none of them involve an interpretation of a statute giving a state land use agency the power to prevent a zoning ordinance from having any legal effect if it fails to meet certain prescribed goals established by that agency.

In *Kuzinich*, the operator of an adult movie theater and an adult bookstore applied for a third land use permit to authorize him to continue operating these businesses. *Kuzinich*, 689 F.2d at 1347. Before his application was acted upon by the planning commission, the Board of Supervisors directed the county counsel to file an action to enjoin the operation of the movie theater and the bookstore. On the same date, the Board of Supervisors adopted an emergency amendment to the zoning ordinances which made the operation of Kuzinich's adult businesses unlawful at their current locations. *Id.*

We held in *Kuzinich* that the members of the Board of Supervisors were absolutely immune regarding the adoption of the emergency ordinance that outlawed Kuzinich's businesses at their present addresses. *Kuzinich*, 689 F.2d at 1349–50 (citing, *inter alia, Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), and *Hernandez v. City of Lafayette*, 643 F.2d 1188 (5th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982)). We distinguished this legislative act from the action of the Board of Supervisors in ordering the county counsel to file a suit to enjoin the operation of Kuzinich's businesses. We held that this act was an exercise of the Supervisors' *executive* function. *Id.* at 1350. In the matter *sub judice*, the LCDC Commissioners did not adopt a new emergency measure whose sole purpose was to ban a specific individual's use of his property. Instead, the LCDC Commissioners informed Klamath County that the comprehensive land use plan would not be permitted to take effect until it was in compliance with the mandatory statewide goals. As discussed above, Oregon law expressly directs the LCDC to deny legal effect to a local government's land use plan that does not comply with mandatory statewide goals.

In *Cinevision*, the city entered into a contract with the Cinevision Corporation permitting it to promote concerts in a municipally owned amphitheater. *Cinevision*, 745 F.2d at 565. The Burbank City Council rejected six of the Cinevision Corporation's events. Cinevision Corporation filed an action under section 1983 alleging first amendment violations. *Id.* One member of the city council, James Richman, was named as a defendant. The district court concluded that Councilman Richman was not entitled to absolute immunity in voting to disapprove the concerts. *Id.* at 577.

In affirming the district court's ruling in *Cinevision*, we applied the functional test. We concluded that in voting on whether to approve specific proposed concerts, the councilman was administering a municipal contract with a specific corporation, rather than formulating legislative policy or promulgating a rule of conduct with general application. *Id.* at 580. We declined, however, to adopt the rule suggested by Zamsky in this matter, that would define an

executive act as "an act directed at one or a few individuals." *Id.* at 579.

Unlike the circumstances in *Cinevision*, the LCDC Commissioners were not monitoring Zamsky's performance under a comprehensive land use plan that had been previously acknowledged. The LCDC continuation order was directed at requiring Klamath County to comply with mandatory land use goals as a pre-condition to the approval of its comprehensive plan as required under Oregon law.

In *Bateson*, the City Council of Billings, Montana, voted to withhold the issuance of a building permit to the plaintiff "although all requirements had been satisfied." *Bateson*, 857 F.2d at 1302. The City of Billings' regulations *"do not provide for review by the City Council before a building permit can issue." Id.* at 1303 (emphasis added). Bateson filed a section 1983 action against individual members of the Billings City Council. The district court concluded that absolute immunity did not apply. *Id.* at 1302. We affirmed the district court's judgment. Relying on *Kuzinich*, we held that "the executive, rather than legislative, nature of their decision to arbitrarily withhold Bateson's building permit precludes any absolute immunity for their constitutional tort." *Id.* at 1304.

In *Bateson*, the Billings City Council had no authority to review the applicant's building permit. In the instant matter, the LCDC was required by Oregon law to review the 1981 Klamath County Plan before permitting it to be put in force. Thus, unlike the Billings City Council, the LCDC Commissioners were performing their prescribed legislative function in insisting that that portion of Klamath County's comprehensive land use plan that referred to the proposed development of Zamsky's property comply with the mandatory statewide goals.

## Conclusion

My esteemed colleagues have mischaracterized the LCDC's continuance order requiring Klamath County to redraft its comprehensive plan to comply with Oregon's mandatory land use goals as "an action against a specific individual." Opinion at 679. This error has led the majority to conclude that our decision in *Cinevision* compels reversal. In *Cinevision*, the plaintiff sued because of the City Council's conduct in executing a contract authorizing concerts on municipal property. We concluded that the City Council's actions were purely administrative. In this matter, the LCDC did not take action against a specific individual. The LCDC simply carried out its legislative function to "veto" Klamath County's comprehensive land plan because it did not comply with Oregon's land use goals.

The LCDC's acknowledgment of a local government's land-use plans, giving them the force of law, is a legislative function. An acknowledgment constitutes "the formulation and promulgation of legislative policy as a defined and binding rule of conduct." *Yakus v. United States*, 321 U.S. 414, 424, 64 S.Ct. 660, 667, 88 L.Ed. 834 (1944). A corollary to the acknowledgment power is the power to veto local legislation and thereby prevent it from having any legal effect. Absent LCDC acknowledgment, there is no binding rule of conduct because local land-use plans have no legal effect until they receive LCDC approval. The LCDC exercises its "veto" power either in the form of a denial or continuance order. Zamsky has challenged the LCDC's exercise of this function. The Supreme Court instructed in *Lake Country Estates*, 440 U.S. at 406, 99 S.Ct. at 1179, that to the extent that the agency members act in a legislative capacity, they are entitled to absolute immunity.

Because the defendants acted in a legislative capacity in this matter, I would affirm the district court's determination that they are entitled to absolute immunity.