**GURU NANAK SIKH SOCIETY OF YUBA CITY, a California nonprofit corporation, Plaintiff,**

v.

**COUNTY OF SUTTER, et al., Defendants.**

**No. CV.S–02–1785 LKK/GGH.**

United States District Court, E.D. California.

Oct. 17, 2003.

See, also, 326 F. Supp.2d 1140, 2003 WL 23676118.

Michael R Barretter, Law Office of Michael R Barretter, Yuba City, CA, for plaintiff.

Jeffrey Thomas Melching, Rutan and Tucker, Costa Mesa, CA, for defendants.

## ORDER

KARLTON, Senior District Judge.

Plaintiff, a religious organization, brings this civil rights action challenging county officials' denial of its application for a permit to build a temple on its land. This matter comes before the court on defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). I decide the matter on the basis of the papers and pleadings filed herein, and after oral argument.

## I.

## THE COMPLAINT

Plaintiff Guru Nanak Sikh Society of Yuba City (GNSSYC) is a non-profit or-
ganization dedicated to fostering the teachings and practices of the Sikh religion.[1] This action concerns a parcel of property that plaintiff owns in Yuba City, and on which plaintiff has sought to build a Sikh temple, or *gurudwara.* Plaintiff brings suit against the County of Sutter and its Board of Supervisors, as well as Casey Kroon, Dennis Nelson, Larry Munger and Dan Silva, each sued in their official capacities as members of the Sutter County Board of Supervisors. The suit alleges various constitutional and statutory violations in connection with the County's denial of plaintiff's application for a conditional use permit for building the temple.

## A. THE GROVE ROAD PROPERTY

On April 4, 2001, plaintiff initially attempted to obtain a conditional use permit for the construction of a temple on its 1.89 acre property on Grove Road in Yuba City. The proposed use included a 2,000 square foot assembly area, 1,550 square foot dedicated to restrooms, storage and an entryway, and an additional 1,500 square feet dedicated as a dining area and conversion of an existing building to be used as a commercial kitchen for temple activities. The proposed temple site would hold religious ceremonies for no more than 75 people at a time. The property was in an area designated for residential use, primarily for large-lot single-family residences; in such areas, churches and temples are only conditionally permitted.

The Sutter County Community Services Department issued a report recommending that the County Planning Commission

---

1. The Sikh religion, or Sikhism, is centered in the Indian state of Punjab and has approximately 19 million adherents worldwide. By the late 1990s, Sikhism was the world's fifth largest faith, with some 175,000 followers in the United States. Its founder was the mystic Guru Nanak (1469–1539), who proclaimed monotheism, the provisional nature of orga-

nized religion, and direct realization of God through religious exercises and meditation. Sikhism is heterodox, combining the teachings of Bhakti Hinduism and Islamic Sufism. *See* W.H. McLeod, *Guru Nanak and the Sikh Religion* (1976); J. O'Connell, ed., *Sikh History and Religion in the Twentieth Century* (1988).

grant the conditional use permit. The report indicated that while the permit presented potential conflicts with established residences in the area, the conflicts could be minimized by specifically recommended conditions which would be consistent with the general plan. At a public meeting on April 4, 2001, however, the County Planning Commission voted unanimously to reject the conditional use permit. The decision was apparently based on citizen objections concerning noise and traffic that would interfere with the existing residential neighborhood. Following the Commission's denial, plaintiff began searching for a more suitable parcel of property for the proposed temple.

**B. THE SUBJECT PROPERTY**

In 2002, plaintiff acquired the subject property for the purposes of building a temple there. It is a 28.8 acre parcel located in an area zoned for general agricultural use. The parcel included an existing 2,300 square foot single family residence, which the plaintiff proposed to convert into a Sikh temple by increasing the size of the building to approximately 2,800 square feet. As before, the building was designed to accommodate religious services for no more than 75 people at any given time.

The County Community Services Department again recommended approval of plaintiff's application for a conditional use permit, including certain mitigation measures to alleviate environmental concerns. On April 3, 2002, the County Planning Commission held a public meeting to consider plaintiff's permit application. After receiving evidence and public comment, the Commission approved the permit subject to certain mitigating conditions.

On April 5, 2002, an appeal of the Commission's decision was filed with the Board of Supervisors, and a hearing on that appeal was set for May 21, 2002. On May 10, 2002, the County Community Services Department submitted its staff report, recommending that the Board of Supervisors deny the appeal and uphold the decision of the Planning Commission to approve the permit. The Department determined that the proposed use was consistent with the general plan and that the recommended mitigation measures would mitigate any adverse impact on surrounding property owners.

On May 21, 2002, the Board of Supervisors met to consider the appeal and, by unanimous vote, rejected the recommendation of the Community Services Department and reversed the County Planning Commission's decision to grant the conditional use permit. The Board of Supervisors directed county counsel to prepare findings that: (1) the proposed use would create an unacceptable level of traffic, (2) the proposed use would conflict with agricultural operations in the area, (3) the proposed use is inconsistent with residential uses in the area, and (4) the establishment, maintenance, and operation of the proposed use will be detrimental to the health, safety and general welfare of persons residing or working in the neighborhood of the proposed use, and be detrimental or injurious to property improvements in the neighborhood and to the general welfare of the county.

**C. PLAINTIFF'S CLAIMS**

On August 19, 2002, plaintiff filed the instant action, alleging over twenty state and federal claims. Thereafter, plaintiff voluntarily withdrew thirteen of these claims. Plaintiff's remaining claims allege that Sutter County's land use regulations, both on their face and as applied, and defendants' denial of the conditional use permit application, violate the Free Exercise and Equal Protection Clause of the

Constitution, and the Religious Land Use and Institutionalized Persons Act (RLUIPA). A cause of action for judicial review in accordance with California Code of Civil Procedure § 1094.5 also remains.

Plaintiff alleges that defendants have deprived it and its members of their right to be free from religious discrimination and their right to free exercise of religion by treating them on terms less than equal to those of a non-religious organization, by imposing a substantial burden on religious exercise, and by unreasonably limiting religious assemblies. Plaintiff seeks injunctive, declaratory and compensatory relief.

## II.

### STANDARDS UNDER FED. R. CIV. P 12(C)

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as to not delay the trial." Fed.R.Civ.P. 12(c). All allegations of fact by the party opposing a motion for judgment on the pleadings are accepted as true. *Doleman v. Meiji Mut. Life Ins. Co.,* 727 F.2d 1480, 1482 (9th Cir.1984). A "dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Id.* (quoting 5C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1368, at 690 (1969)); *see also McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir.1988).

When a Rule 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Rule 12(b)(6). *McGlinchy,* 845 F.2d at 810; *Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir.1980). Thus, the motion will be granted only if the movant establishes that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Newman v. Universal Pictures,* 813 F.2d 1519, 1521–22 (9th Cir.1987). The court must accept all material allegations of the complaint as true and all doubts must be resolved in the light most favorable to the plaintiff. *N.L. Indus. Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

However, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R.Civ.P. 12(c).

## III.

### ANALYSIS

Plaintiff bring claims under RLUIPA, the Free Exercise Clause, the Equal Protection Clause, and California Code of Civil Procedure § 1094.5. It challenges defendants' denial of its application for a conditional use permit and the zoning regulations on which that denial was premised.

In support of the instant motion, defendants make two arguments that are directed towards plaintiff's federal clams generally; they argue that a federal action challenging the Board's decision is barred by the doctrine of claim preclusion and that the individual defendants are entitled to absolute immunity. They also argue that the RLUIPA claims alleged against individual members of the Board of Supervisors must be dismissed because RLUIPA claims may not be asserted against in-

dividuals, and that the Equal Protection Clause claim must be dismissed because it fails as a matter of law. Finally, defendants argue that plaintiff's state law cause of action must be dismissed because it runs afoul of the applicable statute of limitations. With the exception of this final argument, defendants' contentions are without merit.

## A. CLAIM PRECLUSION

■ The doctrine of claim preclusion "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.' ... [T]he effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties whether or not raised at trial." *Haphey v. Linn County,* 924 F.2d 1512, 1515 (9th Cir.1991). Under 28 U.S.C. § 1738, federal courts are required to give preclusive effect to state court reviewed administrative determinations. In *Miller v. County of Santa Cruz,* 39 F.3d 1030, 1032–33 (9th Cir.1994), the Ninth Circuit held that, as a matter of federal common law, preclusive effect must also be given to "state administrative adjudications of legal as well as factual issues, *even if unreviewed,* so long as the state proceeding satisfies the requirements of fairness outlined in *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)." (emphasis added) (parallel citations and internal quotations omitted). Relying on *Miller,* defendants argue that the unre-

viewed decision of the County Board of Supervisors denying plaintiff's permit application should be given preclusive effect and should bar plaintiff's federal claims in this lawsuit. The argument fails for at least two reasons.

First, and perhaps most obviously, the doctrine of claim preclusion is inapposite because the claims in this lawsuit are entirely different from the claim, or more accurately, the application, that was denied by the Board of Supervisors. Plaintiff's complaint alleges that the Board violated their rights under RLUIPA, the Free Exercise Clause and the Equal Protection Clause. Those claims could not have been before the Board, of course, because it was the Board's ultimate decision to reverse the County Planning Commission, and the allegedly discriminatory nature of that decision, that gave rise to plaintiff's claims. Moreover, plaintiff challenges not only the Board's decision, but the requirements of the Sutter County Zoning Code on which the Board's decision was based.[2]

In contrast, *Miller* involved a suit by a county employee who had been fired for disciplinary reasons and who appealed his termination to the county civil service commission. After Miller's civil service commission appeal was denied, he could have petitioned for a writ of mandate in California state court. Instead, he filed a § 1983 claim for violations of procedural and substantive due process in federal court. The Ninth Circuit held that Miller could not continue to litigate issues related to his

---

2. At oral argument, counsel for defendants pointed to tab 37 of the administrative record, which they argue establishes that the RLUIPA and constitutional issues presented here had been before the Board of Supervisors in the form of a letter from the plaintiff. The presence of this letter in the record makes no difference. Certainly, this evidence cannot change the fact that the lawsuit before the court challenges the Board's own actions and therefore could not possibly have been decided by the Board in a manner warranting preclusion. The acceptance of defendants' argument would, in some circumstances, result in a local body shielding itself from federal court review of an allegedly unconstitutional action simply because that body had been informed that its actions were unconstitutional.

termination by recasting them in constitutional terms. Had Miller alleged constitutional violations on the part of the county civil service commission, however, his suit would be analogous to the instant case, and the claim preclusion doctrine would have been inapplicable. It would be counterintuitive, to say the least, for a federal court to shield local government officials from scrutiny under the Constitution and federal civil rights laws by giving preclusive effect to their allegedly discriminatory decisions. Federal common law does not command such an abdication of judicial responsibility.

Second, even if the claims at issue were the same, it is hardly clear that the application review process before the Sutter County Board of Supervisors, which is essentially a legislative body, would be enough like a judicial process to make claim preclusion appropriate. *Miller* makes clear that an administrative ruling is *only* entitled to preclusive effect when that proceeding "was conducted with sufficient safeguards to be equated with a state court judgment." 39 F.3d at 1032; *see Misischia v. Pirie,* 60 F.3d 626, 629 (9th Cir.1995) (holding that findings of administrative agencies must satisfy both state requirements for preclusion and procedural fairness requirements to have preclusive effect in federal court); *Embury v. King,* 191 F.Supp.2d 1071, 1082 (N.D.Cal.2001) (declining to give preclusive effect to unreviewed administrative decision where procedural safeguards were lacking). The *Miller* court held that three threshold requirements, known as the *Utah Construction* factors, must be met: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." 39 F.3d at 1033 (citing *Utah Construction,* 384 U.S. at 422, 86 S.Ct. 1545). In *Miller,* these factors were

satisfied; the county commission had rendered its decision only after "a public evidentiary hearing at which Miller was represented by counsel and was permitted to present oral and documentary evidence and to call witnesses." 39 F.3d at 1032.

It is true that prior to *Miller,* the Ninth Circuit accepted the parties' agreement that claim preclusion could apply to review of a land use application by a county board of supervisors. *See Valley Wood Preserving, Inc. v. Paul,* 785 F.2d 751 (9th Cir. 1986) ("The parties agree that the Board of Supervisors, in considering the proposed revocation [of a conditional land use permit] acted in a judicial capacity," such that claim and issue preclusion were appropriate). Here, however, defendants have made no effort to show that any of the three *Utah Construction* fairness requirements were met in proceedings before the Board and, in any event, the allegations of the complaint do not suggest that they were.

Thus, because the same claims are not involved and because the threshold fairness requirements have not been established, claim preclusion does not stand as a bar to plaintiff's federal claims.

## B. QUASI–JUDICIAL IMMUNITY

■ Next, defendants argue that the individual members of the Board of Supervisors are shielded from liability by so-called "quasi-judicial" immunity, which extends absolute judicial immunity "to agency officials when they perform functions analogous to those performed by judges." *Buckles v. King County,* 191 F.3d 1127, 1133 (9th Cir.1999). As with the preclusion argument, this contention requires an examination of the nature of the process afforded to the plaintiff. Notably, defendants do not assert that they are entitled to absolute legislative immunity, perhaps

because such an assertion would be difficult to make in light of recent circuit precedent. *See Kaahumanu v. County of Maui*, 315 F.3d 1215 (9th Cir.2003) (holding that a county council's decision to deny conditional use permit to allow business to conduct weddings on its property was an administrative act, rather than a legislative act, and thus, council members were not entitled to absolute legislative immunity).

The Ninth Circuit has explained that the analysis of an absolute immunity claim "begins with a central tenet of American jurisprudence—no one is above the law." *Buckles*, 191 F.3d at 1133; *United States v. Lee*, 106 U.S. 196, 220, 1 S.Ct. 240, 27 L.Ed. 171 (1882) ("No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it."). Accordingly, "a public official seeking 'absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope.'" *Buckles*, 191 F.3d at 1133. The defendants in this case have fallen far short of that burden.

The determination of whether judicial immunity shields officials other than judges turns on whether the relevant "agency adjudications contain *many* of the same safeguards as are available in the judicial process." *Id.* In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), "the Supreme Court identified the following characteristics of the judicial process as sufficient to render the role of the administrative law judge 'functionally comparable' to that of a judge": (1) an adversarial proceeding, (2) a decision-maker insulated from political influences, (3) a decision based on evidence submitted by the parties, and (4) a decision

provided to the parties on all of the issues of fact and law. *Buckles*, 191 F.3d at 1134.

While defendants have cited authority indicating that the consideration of use permit applications is viewed as a quasi-judicial function under state law, *see Topanga Ass'n for a Scenic Community v. County of Los Angeles*, 11 Cal.3d 506, 517, 113 Cal.Rptr. 836, 522 P.2d 12 (1974), they have gone no further in attempting to meet their burden. Moreover, it appears unlikely that defendants would be able to demonstrate sufficient insulation from political influence, given their primary role as elected legislators.

*Buckles* demonstrates what is required of officials claiming quasi-judicial immunity in this context. There, members of Washington State's Growth and Management Hearing Board satisfied the burden by demonstrating that: (1) the Board's proceedings were truly adversarial; (2) the Board's members were protected from political influence "in numerous ways," such as prohibitions on running for public office, *ex parte* communications, and membership by more than two members of the same political party, which "guarantee[d] the impartiality and independence of Board members;" and (3) additional safeguards were present, such as a limited discovery process requiring advance submission of evidence to the other side, sworn testimony, the use of subpoenas, guidance by the state rules of evidence, and a decision based on evidence in the record. Defendants have failed to mention whether any such safeguards were present here.

Indeed, this case appears closer to *Zamsky v. Hansell*, 933 F.2d 677 (9th Cir. 1991) (per curiam). There, the Ninth Circuit held that the Oregon Land Conservation and Development Commission was entitled to neither legislative nor judicial immunity in connection with its review of local land use plans for conformity with

statewide goals. In rejecting a claim of quasi-judicial immunity, the court found it dispositive that "unlike the professional administrative law judges in *Butz,*" the commissioners were "not insulated from the agency that promulgates the rules to be applied. Instead, they are the same individuals who promulgate the 'goals' in the first place; they combine the functions of lawmaker and monitor of compliance. Such combined functions are not uncommon at the local level, but they are inconsistent with the judicial role and judicial immunity." *Id.* at 679. Here, the Board of Supervisors serves in both capacities, and indeed, its actions in both capacities are the subject of the instant lawsuit. As in *Zamsky,* the combination of functions is inconsistent with judicial immunity.

## C. RLUIPA CLAIMS AGAINST INDIVIDUAL DEFENDANTS

■ RLUIPA provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief *against a government.*" 42 U.S.C. § 2000cc–2 (emphasis added). Presumably based on this language, the court in *Hale O Kaula Church v. Maui Planning Com'n,* 229 F.Supp.2d 1056, 1067 (D.Haw.2002), stated that "RLUIPA provides a cause of action against 'governments' and does not appear to allow causes of action against individuals." Defendants argue, based on this observation in *Hale O Kaula Church,* that plaintiff's RLUIPA claims against the individual defendants must be dismissed.

The statute's definition of a "government," however, makes clear that individual government officials may be subject to suit under RLUIPA. The term "government" is defined as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instru-

mentality, or *official of an entity* listed in clause (i); and (iii) any other person acting under color of State law." 42 U.S.C. § 2000cc–5(4)(a). This language leaves little room for ambiguity; an "official" of a "county" is clearly amenable to suit under the statute. The observation of the court in *Hale O Kaula Church,* therefore, misses the mark. *Cf. Kaahumanu v. County of Maui,* 315 F.3d 1215 (9th Cir.2003) (allowing RLUIPA suit to go forward against individual county officials). Plaintiff's claims against the individual members of the Board of Supervisors may proceed.

## D. EQUAL PROTECTION CLAUSE CLAIM

■ Plaintiff also claims that Sutter County's use permit requirement for churches, both on its face and as applied, violates the Equal Protection Clause. Defendants argue that strict scrutiny is inappropriate and that plaintiff's claim fails under rational basis review.

"The first question courts must ask when conducting an equal protection analysis is whether the legislative or administrative classification at issue burdens a 'suspect' or 'quasi-suspect' class. If the statute employs a suspect class (such as race, religion, or national origin) or burdens the exercise of a constitutional right, then courts must apply strict scrutiny, and ask whether the statute is narrowly tailored to serve a compelling governmental interest." *Ball v. Massanari,* 254 F.3d 817 (9th Cir.2001). It is not clear from plaintiff's papers whether plaintiff believes that strict scrutiny is appropriate, although there is some suggestion to that effect in the opposition brief. Because the instant challenge arguably involves a suspect class (a minority religion) and the exercise of a fundamental right (free exercise of religion), one might reasonably believe that ·strict scrutiny is warranted.

Any such suggestion, however, is foreclosed by binding precedent.

While the Supreme Court has not yet directly addressed the equal protection analysis appropriate to municipal restrictions on land use by religious institutions, the Ninth Circuit has concluded, in a challenge closely analogous to the instant case, that rational basis is the appropriate standard. In *Christian Gospel Church, Inc. v. City and County of San Francisco*, 896 F.2d 1221 (9th Cir.1990), the court considered a church's equal protection challenge to a city zoning ordinance requiring a conditional use permit for churches in a residential area. The church contended that the zoning provision discriminated against churches in general and plaintiff in particular. Without elaboration, the court held that "[s]ince the zoning scheme does not implicate a suspect class or a fundamental right, the appropriate question for this equal protection analysis is whether or not the provision is rationally related to a permissible state objective." *Id.* at 1225.[3]

■ Defendants assert that the equal protection clause claim should be dismissed because the challenged requirement is supported by "the legitimate legislative goal of harmonizing compatible uses and minimizing traffic in an agricultural zone." Their briefing contains no discussion linking the challenged conditional use requirement to this purpose. Even under rational basis review, this bare assertion of legislative purpose, unaccompanied by an attempt to demonstrate why the particular regulation at issue advances that purpose, is insufficient to warrant a rejection of plaintiff's claim at the motion to dismiss stage. *See Congregation Kol Ami*, 309 F.3d at 135 ("That zoning ordinances are subject to such deferential review, however, does not mean that they are subject to no meaningful review.") (citing *Cleburne*, 473 U.S. at 446–47, 105 S.Ct. 3249). In order to properly evaluate the claim, it will be necessary to determine, for instance, what other non-religious uses are permit-

---

3. Other courts considering equal protection challenges in religious land use cases, including those cited by plaintiff, have also uniformly employed a rational basis standard and have eschewed the application of heightened scrutiny. *See Congregation Kol Ami v. Abington Township*, 309 F.3d 120 (3d Cir.2002) ("Like other economic and social legislation, land use ordinances that do not classify by race, alienage, or national origin, will survive an attack based on the Equal Protection Clause if the law is 'reasonable, not arbitrary' and bears 'a rational relationship' to a (permissible) state objective."); *Lakewood, Ohio Congregation of Jehovah's Witnesses v. City of Lakewood*, 699 F.2d 303 (6th Cir.1983) (upholding zoning ordinance that prohibited construction of church buildings in virtually all residential districts of the city using rational basis review).

In *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464 (8th Cir.1991), for instance, the court addressed an analogous equal protection challenge to a municipal zoning ordinance that excluded churches from a commercial zoning area, but allowed other similarly-situated non-commercial entities. The plaintiff church argued that the ordinance should have been subjected to strict scrutiny, relying on the Supreme Court's statement in *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), that a heightened standard of review is required "when state laws impinge on personal rights protected by the Constitution." The Eighth Circuit rejected the request to apply strict scrutiny, holding that "[a]bsent evidence of purposeful discrimination based on religious status, the rational basis standard should apply. The disparate impact of the ordinance on the Church [was] insufficient to support an inference of discriminatory purpose." *Cornerstone Bible Church*, 948 F.2d at 472 n. 13; *cf. Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) ("[O]ur cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional *solely* because it has a racially discriminatory impact.").

ted in the same zone as plaintiff's land, and whether those non-religious uses are materially distinguishable from the non-permitted religious uses in their impact on the surrounding community. *See Cornerstone Bible Church v. City of Hastings,* 948 F.2d at 471; *Congregation Kol Ami,* 309 F.3d at 140–143. Because that evidence is not before the court, and because defendants' attempt to meet the rational basis standard amounts to nothing more than a bare assertion of legislative purpose, the request to dismiss the equal protection claim must be denied.

### E. LIMITATIONS PERIOD UNDER CALIFORNIA GOV'T CODE § 65009(c)

■ Finally, defendants move to dismiss plaintiff's claim for judicial review under Cal.Code of Civil Procedure 1094.5 on the grounds that the claim is barred by the applicable statute of limitations. That statute, California Government Code § 65009(c), provides, in relevant part:

[N]o action or proceedings shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: ... To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903 [applications for conditional use and other zoning permits], or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit.

Defendants contend that plaintiff's claim falls within the clear language of the statute and should be dismissed as untimely filed, because more than 90 days passed between the final May 21, 2002 determination of the Board of Supervisors and the

August 19, 2002, filing of the complaint in this action.

In opposition, plaintiff argues that the statute of limitations applies only to *grants* of conditional use permits, not to *denials* of such permits. The statute itself, however, does not appear to point towards this distinction. On the contrary, the statute limits the period of time in which an action may be filed to "attack, review, set aside, void or annul *any decision*" regarding an application for a conditional use permit. Understandably, plaintiff chooses not to focus on the plain meaning of the statute, and instead directs the court's attention to the legislative findings that accompany the statute. These findings, according to plaintiff, indicate that the legislature was concerned with limitation the time period for actions challenging only grants of use permits. The relevant legislative findings are as follows:

(a)(1) The Legislature finds and declares that there currently is a housing crisis in California and it is essential to reduce delays and restraints upon expeditiously completing housing projects.

(2) The Legislature further finds and declares that a legal action or proceeding challenging a decision of a city, county, or city and county has a chilling effect on the confidence with which property owners and local governments can proceed with projects. Legal actions or proceedings filed to attack, review, set aside, void, or annul a decision of a city, county, or city and county pursuant to this division, including, but not limited to, the implementation of general plan goals and policies that provide incentives for affordable housing, open-space and recreational opportunities, and other related public benefits, can prevent the completion of needed developments even though the projects

have received required governmental approvals.

(3) The purpose of this section is to provide certainty for property owners and local governments regarding decisions made pursuant to this division.

These findings do not dictate that the statute be limited to litigation concerning decisions to grant permits. It is true that the findings suggest that the legislature's stated concern in drafting the statute was the potential detrimental effects of land use litigation on the expeditious completion of housing projects, and it is true that the uncertainty and disruption caused by litigation is primarily a concern when a permit that has been granted is called into question. Nevertheless, the general purpose of promoting "certainty for property owners and local governments regarding [land use] decisions" supports application of the statute to both permit grants and permit denials.

As this court has explained in several past decisions, even if the legislative findings did provide some support for a limited reading of the statute, the established canons of statutory construction would not allow that reading to prevail in the face of unambiguous statutory language. *See United States v. Navarro*, 972 F.Supp. 1296, 1306 (E.D.Cal.1997) (Karlton, J.) ("[W]hatever the two paragraphs of legislative history cited by the government may stand for, under accepted cannons of statutory construction they cannot alter the plain meaning of the statute."); *Darby v. Cisneros*, 509 U.S. 137, 147, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) (holding that recourse to legislative history is unnecessary when a statute's text is plain); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[W]hen the words of a statute are unambiguous, then, ... judicial inquiry is complete.") (citations and internal quotations

omitted). While "[t]he plain meaning rule does not prohibit resort to legislative history," *Tello v. McMahon*, 677 F.Supp. 1436, 1441 (E.D.Cal.1988) (Karlton, J.), such a review is limited to determining "whether there is [a] 'clearly expressed legislative intention' contrary to the plain language of the statute." *Id.* (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). "Very strong evidence, if not explicit language, from the legislative history is necessary to overcome the plain meaning naturally to be drawn from the language of the statute." *Id.* (citing *In re Seidel*, 752 F.2d 1382, 1385 (9th Cir.1985)). No such evidence is before the court. Accordingly, plaintiff's state law cause of action for judicial review must be dismissed.

## IV.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings is DENIED IN PART and GRANTED IN PART, as follows:

1. With respect to plaintiff's federal claims, defendants' motion is DENIED.

2. With respect to plaintiff's claim for judicial review under California Code of Civil Procedure § 1094.5, defendants' motion is GRANTED WITH PREJUDICE.

IT IS SO ORDERED.