Stephen **EMBURY**, M.D., Plaintiff,

v.

Talmadge E. **KING** Jr., M.D., et. al., Defendants.

No. C 01–01448 CW.

United States District Court, N.D. California.

Dec. 13, 2001.

Andrew Thomas Sinclair, Sinclair Law Offices, Fred M. Blum, Jaffe Martini & Blum, San Francisco, CA, for Plaintiff.

Gary T. Lafayette, Susan T. Kumagai, Lafayette & Kumagai LLP, San Francisco, CA, for Defendants.

## ORDER DENYING MOTION TO DISMISS

WILKEN, District Judge.

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Stephen Embury opposes the motion. The matter was heard on October 26, 2001. Having considered all of the papers filed by the parties and oral argument on the motion, the Court DENIES the motion (Docket # 36).

## BACKGROUND

From approximately 1985 to December 31, 1999, Plaintiff Stephen Embury was employed as an Associate Professor in Residence at the University of California, San Francisco, School of Medicine. Plaintiff contends that his employment at UCSF was governed by the same terms and conditions as the employment of tenured faculty at the University, including the right not to be terminated arbitrarily and the right to a full evidentiary hearing before termination of employment.

In January, 1998, a researcher in Plaintiff's laboratory filed an internal complaint against him alleging sexual harassment.

In April, 1998, Defendant King unilaterally reduced Plaintiff's salary by twenty-five percent. In May, 1998, Defendant

King informed Plaintiff that, effective June 30, 1998, Plaintiff was required to step down from his position as Head of Hematology Division. Defendant King also told Plaintiff at that time that if he did not maintain adequate extramural funding, his employment would be terminated.

In May, 1999, the researcher who had filed the sexual harassment complaint filed a lawsuit against Plaintiff. In June, 1999, Plaintiff asked Defendant Regents to defend the lawsuit pursuant to California Government Code § 995. Plaintiff alleges that his request for representation provided part of the motive for adverse employment actions subsequently taken against him.

On December 22, 1999, Plaintiff wrote to Defendants King and Goldman. In his correspondence, Plaintiff asserted that, because of his position as an Associate Professor in Residence with "the moral equivalent of tenure," dismissal was improper. He requested continued employment and research support and asked for a "face to face" meeting prior to termination. Defendant King responded the next day, agreeing to meet on December 30, 1999 or some time thereafter, but reaffirming that Plaintiff's employment with UCSF would be terminated as of January 1, 2000 and his lab space would be reassigned to another faculty member.

On December 31, 1999, Plaintiff was terminated from his position. On May 8, 2000, he filed a grievance with the UCSF Committee on Privilege and Tenure (Committee) objecting to his termination. The Committee conducted an ex parte investigation into Plaintiff's grievance. Plaintiff was interviewed by the Committee at least once. In January, 2001, the Committee denied all relief to Plaintiff. The Committee specifically denied Plaintiff a hearing at which he would have the opportunity to prove that he had a right to reappointment.

While the grievance was pending, Defendant King agreed to permit Plaintiff to return to employment at UCSF. In approximately September, 2000, Plaintiff returned to UCSF, but under terms and conditions of work substantially inferior to those he enjoyed prior to his termination.

On December 29, 2000, Plaintiff filed similar complaints in both State and federal courts. In April, 2001, Defendants removed Plaintiff's State court action. Also in April, 2001, Plaintiff brought a petition for a writ of mandate in State court seeking relief as a third party beneficiary of a contract between UCSF and the National Institute of Health (NIH). On July 6, 2001, Plaintiff's federal court action and removed State court action were dismissed with leave to amend. Plaintiff filed the amended complaint, which is the subject of this motion, on August 6, 2001.

In his amended complaint, Plaintiff alleges that the named individual and institutional Defendants deprived him of property without due process of law when they terminated his employment without a hearing. He seeks relief for this deprivation under both 42 U.S.C. § 1983 and the California Constitution, Article I, §§ 7 & 15. In addition, Plaintiff alleges that Defendant Regents contravened a fundamental public policy of the State of California when it terminated his employment. Finally, Plaintiff sues the Regents for breach of contract, alleging that he was a third party beneficiary of a contract between UCSF and the NIH.

Defendants move to dismiss. The Regents invokes Eleventh Amendment immunity with respect to all claims. Defendants further contend that all claims are barred by Plaintiff's failure to exhaust available administrative and judicial remedies. In addition, with respect to the Section 1983 claims, Defendants raise a statute of limitations defense. With respect to

the public policy tort claim and the breach of contract claim, Defendants argue that Plaintiff has failed to allege facts upon which relief can be granted.

## LEGAL STANDARD

■ A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *See Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).

■ Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988).

## DISCUSSION

### A. Immunity

■ It is undisputed that the Regents is an instrumentality of the State of California. As such, it is immune under the Eleventh Amendment from a suit in federal court for damages. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) ("the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies"). The Eleventh Amendment is not, however, an automatic bar to this Court's authority. "Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense." *Wisconsin Dept. of Corrections v. Schacht,* 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998).

■ The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (internal citations omitted). This "stringent" test is met where there is "unequivocal[ ] evidence [of] the state's intention to subject itself to the jurisdiction of the federal court." *Hill v. Blind Industries and Services of Maryland,* 179 F.3d 754, 758–759 (9th Cir.1999) (citing *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). Though a State's waiver of immunity must be "unequivocal," it need not amount to "an express written waiver . . . . On the contrary, we have recognized that a State may waive its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity." *Id.*

■ Although originally sued in State court, the Regents removed this case to federal court. *See* April 12 Notice of Removal. Removal is proper only where all defendants consent to removal and join in the removal petition. *Hewitt v. City of Stanton,* 798 F.2d 1230, 1232 (9th Cir. 1986); *Chicago R.I. & P.R. Co. v. Martin,* 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900). Plaintiff contends that consent to removal constituted a waiver of the Re-

gents' Eleventh Amendment immunity. "Although under no compulsion to appear in federal court, [the State defendant] voluntarily invoke[d] its jurisdiction" by joining in the notice of removal. *Schacht,* 524 U.S. at 395, 118 S.Ct. 2047 (Kennedy, J. concurring).

Plaintiff finds support for this contention in Justice Kennedy's opinion concurring in the judgment in *Wis. Dept. of Corrections v. Schacht.* In his concurrence, Justice Kennedy argued for a "rule of waiver in every case where the State, through its attorneys, consents to removal from the state court to the federal court." *Id.* at 397, 118 S.Ct. 2047. Justice Kennedy reasoned that because "a State which is made a defendant to a state-court action is under no compulsion to appear in federal court ... any appearance the State makes in federal court may well be regarded as voluntary." *Id.* at 395–96, 118 S.Ct. 2047. The State's consent to removal, therefore, "amounted to a direct invocation of the jurisdiction of the federal courts . . . ." *Id.* at 397, 118 S.Ct. 2047. Only Justice Kennedy addressed this issue. The unanimous opinion of the Court resolved the dispute on other grounds. *Id.* at 398, 118 S.Ct. 2047 (because "the [removal] issue was not addressed either by the parties or the Court of Appeals, the proper course is for us to defer addressing the question until it is presented for our consideration, supported by full briefing and argument, in some later case").

Several circuit courts have found the reasoning employed by Justice Kennedy persuasive. *See Sutton v. Utah State School for the Deaf & Blind,* 173 F.3d 1226 (10th Cir.1999) (by removing case to feder-

al court, State unequivocally waived its immunity); *Newfield House, Inc. v. Mass. Dept. of Public Welfare,* 651 F.2d 32, 36 n. 3 (1st Cir.1981) (State waived immunity by removing case to federal court); *Estate of Porter v. Illinois,* 36 F.3d 684, 691 (7th Cir.1994) (holding that removal may constitute a waiver if State official has authority to waive immunity).[1] In *Hill,* 179 F.3d at 758, the Ninth Circuit noted that it had "not had occasion to address the issue," but commented that "[w]e find persuasive Justice Kennedy's thoughtful concurrence in [*Schacht* ]."

In *Hill,* moreover, the court found that the State had waived its Eleventh Amendment immunity when it waited until the first day of trial before raising its immunity defense. *Id.* at 756. The court reasoned that allowing the tardy invocation of the Eleventh Amendment would undermine "the integrity of the judicial process" by permitting a party "anticipating defeat" to "void the entire proceeding and begin anew in a different forum." *Id.* at 757. By requiring a timely assertion of the immunity privilege, the court hoped to "minimize[ ] the opportunity for improper manipulation of the judicial process." *Id.* at 758. Similar fairness concerns informed Justice Kennedy's concurring opinion. "Under a rule inferring waiver from the failure to raise the objection at the outset of the proceedings, States would be prevented from gaining an unfair advantage." *Schacht,* 524 U.S. at 395, 118 S.Ct. 2047 (Kennedy, J. concurring).

This case exemplifies the risks of "improper manipulation of the judicial process" that informed the Ninth Circuit's decision in *Hill,* 179 F.3d at 758, and Jus-

---

1. It is arguable that California law does not grant the Regents the authority to waive the Eleventh Amendment on behalf of the State. *See Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). The Regents, however, has not argued "that

state law precluded waiver [and the Court] need not address the issue.... Unless the State raises the matter, a court can ignore it." *Hill,* 179 F.3d at 762 *as amended by* 201 F.3d 1186 (citing *Schacht,* 524 U.S. at 389, 118 S.Ct. 2047).

tice Kennedy's *Schacht* concurrence. In this case, Plaintiff brought State and federal claims against both the Regents and individual Defendants in State court. Defendants then removed to federal court on the basis of the federal question presented by Plaintiff's civil rights claim. Without the Regents' consent, the individual Defendants could not have removed the claims to federal court. *See, supra, Chicago R.I. & P.R. Co.*, 178 U.S. at 245, 20 S.Ct. 854; *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1266 (9th Cir.1999) (Section 1446 requires all proper defendants to join or consent to the removal notice). In federal court, however, the Regents sought immunity as to both federal and State claims. The Regents was not entitled to immunity on Plaintiff's State claims so long as they remained in State court.

If the Regents were successful in invoking immunity, therefore, the State claims against it either would be remanded to State court or dismissed and refiled there. *See Schacht*, 524 U.S. at 391–92, 118 S.Ct. 2047 (28 U.S.C. § 1447(c) could be read to require remand of those claims foreclosed by the Eleventh Amendment); *Lee v. American National Ins. Co.*, 260 F.3d 997, 1007 (9th Cir.2001) (court should remand rather than dismiss "an otherwise viable state-law claim" if "that claim was part of a removed ... case which was subsequently determined to be beyond the federal court's power to decide"). The federal claim against the individual Defendants, however, would remain in federal court. *See Schacht*, 524 U.S. at 392–93, 118 S.Ct. 2047 (remand of entire case improper if federal question jurisdiction exists on any claims). Consequently, removal followed by invocation of the immunity privilege would result in the removal of a single cause of action from a unified complaint. This result is not contemplated by the statutory scheme governing removal. *See* 28 U.S.C. § 1441(c) (providing for removal of "entire case"); *Dillon v. State of Miss.*

*Military Dept.*, 23 F.3d 915, 918 (5th Cir. 1994). The individual Defendants would be in federal court, which they could not have accomplished without the Regents' maneuver, and Plaintiff would be forced to litigate his case in two fora simultaneously.

Such gamesmanship is prejudicial to Plaintiff and results in unnecessary duplication of judicial resources. "A defendant has no right to say that an action shall be several which a plaintiff elects to make joint. A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his own suit to final determination in his own way." *Torrence v. Shedd*, 144 U.S. 527, 530, 12 S.Ct. 726, 36 L.Ed. 528 (1892). Indeed, this is the rationale that underlies the "rule of unanimity" requiring the consent of all defendants for removal.

> The rule of unanimity appears to be based on the principle that the plaintiff should only be required to proceed against multiple defendants in one action. If the plaintiff chooses to file in state court, it may proceed against all defendants in state court unless they all agree to remove in a proper manner, in which case the defendants' choice of forum will be honored. No defendant may split the case into separate parts by its removal decision.

*Branch ex rel. Branch v. Coca–Cola Bottling Co. Consol.*, 83 F.Supp.2d 631, 636 (D.S.C.2000).

Similarly, "as a matter of justice as well as judicial economy, it is desirable to have the same issues heard and decided by the same adjudicator." *Boggs v. Lewis*, 863 F.2d 662, 665 (9th Cir.1988) (citation omitted). In *Boggs*, a district court denied a motion to remand a State law negligence claim that had been removed along with a removable claim. In affirming the district court, the Ninth Circuit emphasized the considerable resources expended by the

district court prior to the motion to remand. *Id.* In this case, this Court has exercised jurisdiction over this claim for eight months. It has digested considerable briefing on both the State and federal claims in the complaint, twice heard oral argument and adjudicated two motions to dismiss.[2] Upon remand, the State court where this action was originally filed would be required to address the very same issues that have been twice briefed before this Court. In this circumstance, the Regents' tardy invocation of its Eleventh Amendment immunity prejudices not only Plaintiff, but unnecessarily burdens both the State and federal courts, and permits the State to gain an "unfair advantage" in this litigation. *Schacht,* 524 U.S. at 395, 118 S.Ct. 2047 (Kennedy, J. concurring).

The Regents rely on *Watkins v. Cal. Dept. of Corrections,* 100 F.Supp.2d 1227, 1230 (C.D.Cal.2000) to argue that consent to removal is not a sufficiently explicit waiver of the immunity privilege. In *Watkins,* the court concluded that removal alone did not constitute a waiver of immunity. That court noted that recent Supreme Court decisions "suggest[ ] that the lower courts should be slow to impose an 'implied' waiver of sovereign immunity as the price for allowing a state to exercise any of its rights." *Watkins,* 100 F.Supp.2d at 1230 (citing *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) and *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)). Informed by these recent decisions, the *Watkins* court concluded that in determining whether there has been a waiver of the Eleventh Amendment, "the most important factor to consider is whether the state has actively litigated the merits of its case before the federal tribunal." *Id.*

However, as the *Watkins* court noted, neither *Alden* nor *College Sav. Bank* addressed the question now before the Court. Rather, *Alden* concerned the power of Congress to abrogate a State's sovereign immunity without its consent, and *College Sav. Bank* held that a State does not "constructively" waive its immunity through its activities in interstate commerce. In *College Sav. Bank,* in fact, the Court reaffirmed a State's prerogative to waive the Eleventh Amendment immunity privilege. "Generally, we will find a waiver either if the State voluntarily invokes our jurisdiction, or else if the State makes a clear declaration that it intends to submit itself to our jurisdiction." *College Sav. Bank,* 527 U.S. at 675–676, 119 S.Ct. 2219 (internal citations omitted). The question presented here is whether removal of State law claims from the State court where they are brought is a voluntary invocation of this Court's jurisdiction. For the reasons stated above, the Court finds that it is.

**B. Statute of Limitations**

**1. Section 1983**

 Section 1983 does not contain an independent statute of limitations. Instead, the Court will apply the forum State's general tort statute of limitations to claims brought under section 1983. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In California, the appropriate statute of limitations is one year. *Harding v. Galceran,* 889 F.2d 906, 907 (9th Cir.1989). The one year limitations period begins to run on the date the plaintiff "knows or has reason to

---

**2.** Indeed, it was only after the Court informed Defendants at both the July 6, 2001 and the October 26, 2001 hearings on their motions to dismiss that it was not disposed to grant the motion with regard to the State law claims, that Defendant Regents invoked immunity as to all claims.

know of the injury that is the basis of the action." *Alexopulos v. San Francisco Unified School District,* 817 F.2d 551, 555 (9th Cir.1987).

In the present case, Plaintiff alleges a violation of procedural due process, specifically, that his employment as a professor at UCSF was a protected property interest and that he was deprived of this property without due process of law.

In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* The constitutional violation actionable under section 1983 is not complete when the deprivation occurs; it is not complete unless and until the state fails to provide due process.

*Zinermon v. Burch,* 494 U.S. 113, 125–126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (citations omitted) (emphasis in original).

 "It has become a truism" that a State fails to satisfy this due process requirement if it deprives the owner of a protected property interest without providing "some form of hearing." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (internal citation omitted). In most cases, "the Constitution requires some kind of hearing *before* the state deprives a person of ... property." *Zinermon,* 494 U.S. at 127, 110 S.Ct. 975 (emphasis in original). Only where a pre-deprivation hearing is impossible will a post-deprivation hearing satisfy due process. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

 In this case, Plaintiff alleges he was informed in May, 1998 of his impending dismissal and subsequently dismissed on December 31, 1999. Defendants contend that the statute of limitations began to run when Plaintiff was told that he would be fired because that is when Plaintiff had "reason to know of the injury that is the basis of the action." *Alexopulos,* 817 F.2d at 555. However, the injury that Plaintiff asserts is not his dismissal, but his dismissal without due process. The relevant inquiry is when Plaintiff knew or had reason to know that he would be dismissed without a pre-deprivation hearing as required by *Zinermon,* 494 U.S. at 125–126, 110 S.Ct. 975.

According to the complaint, Plaintiff made a written request "for a face to face meeting" with Defendants Goldman and King on December 22, 1999. Plaintiff indicated that he wished to meet to discuss his "future at SFGH and UCSF." This written request explicitly asserted Plaintiff's belief that he was entitled to continued employment beyond December 31, 1999. Defendant King responded that he and Defendant Goldman would meet with Plaintiff, at the earliest, on December 30, 1999. Plaintiff alleges that he was terminated on December 31, 1999 without proper notice or an opportunity to be heard.

Plaintiff filed his complaint less than one year after the December 30 meeting was scheduled. He sufficiently alleged a property interest in his continued employment, that he was deprived of that property interest, and that no adequate pre-deprivation hearing took place. Under the circumstances alleged, due process required a pre-termination hearing. Consequently, Plaintiff's section 1983 claim began to accrue when he was denied a pre-termination hearing. This denial was complete on the date of his termination—December 31, 1999. Plaintiff filed his complaint on December 29, 2000, within the one year limitations period.

 Plaintiff contends that he was deprived of due process a second time when

Defendants failed to provide a "suitable postdeprivation remedy" after his dismissal. *Hudson,* 468 U.S. at 533, 104 S.Ct. 3194. A post-deprivation hearing may satisfy the requirements of due process if the substantive deprivation is the result of "random and unauthorized" conduct by the individual defendants. *Id.* In other words, where a pre-deprivation hearing is impossible, the State may satisfy due process requirements through post-deprivation remedies. It is arguable that Plaintiff's termination was the result of "random and unauthorized" conduct by the individual Defendants. If so, the Regents was obliged to provide a post-deprivation hearing.

Plaintiff alleges that the Regents did not provide a suitable post-deprivation remedy because it refused to allow a hearing before denying his grievance. Plaintiff alleges that he did not learn that the Regents had denied him a post-deprivation hearing until January 30, 2001. Plaintiff's § 1983 claim against the Regents for post-termination denial of due process began to accrue on January 30, 2001 when Plaintiff learned he had been denied a post-deprivation hearing. His complaint was filed within the one year limitations period.

**2. Wrongful Discharge in Violation of Public Policy**

■ Defendants contend that Plaintiff's claim for wrongful termination in violation of public policy began to accrue when Plaintiff was informed that he would be terminated. Under California law, however, the statute of limitations for a wrongful termination cause of action begins to run when a plaintiff is actually terminated, not when he is given notice of impending termination. *Romano v. Rockwell Int'l, Inc.,* 14 Cal.4th 479, 59 Cal. Rptr.2d 20, 926 P.2d 1114, 1128 (1996) ("[W]hen an employee alleges that his or her employment has been terminated in violation of public policy, a cause of action

will accrue at the time of dismissal for the purpose of the statute of limitations."). Plaintiff's employment was terminated on December 31, 1999. He filed his claim within the one year limitations period.

**C. Exhaustion**

**1. Section 1983**

The California Code of Civil Procedure provides for judicial review of final administrative determinations. Under § 1094.5 of the Code (writ of administrative mandamus), a State court may issue a writ of mandate setting aside an administrative decision. Defendants contend that Plaintiff may not bring this federal action for damages unless and until he has sought direct review of the administrative decision in State court. Because Plaintiff did not seek to overturn the Committee's ruling through a writ of mandate, Defendants argue that the ruling should be given preclusive effect in this litigation.

Defendants rely on *Miller v. County of Santa Cruz,* 39 F.3d 1030 (9th Cir.1994). In that case, the court affirmed a summary judgment ruling for the defendant in a § 1983 action on the grounds that the administrative ruling sustaining the plaintiff's dismissal had preclusive effect on the action pending in federal court. In *Miller,* the plaintiff was dismissed from his employment at the Santa Cruz County Sheriff's Department. He contested his dismissal before the Santa Cruz County Civil Service Commission. The Commission affirmed his dismissal after "a public evidentiary hearing at which Miller was represented by counsel and was permitted to present oral and documentary evidence and to call witnesses." *Miller,* 39 F.3d at 1032.

California Code of Civil Procedure § 1094.5 provided Miller with an opportunity to seek judicial review of the Commission's decision in Superior Court. Miller

**1082**

declined to do so. Instead, he brought a section 1983 suit in federal court. The Ninth Circuit held that the unreviewed administrative determination precluded the plaintiff's section 1983 claim.

The *Miller* court first noted that an administrative ruling is only entitled to preclusive effect when that proceeding "was conducted with sufficient safeguards to be equated with a state court judgment." *Id.* at 1032–1033 (citing *Plaine v. McCabe*, 797 F.2d 713, 719 (9th Cir.1986)). Specifically, the court held that three distinct "fairness requirements" must be satisfied before a prior administrative ruling can bar a § 1983 suit. First, the administrative agency must act in a judicial capacity. Second, the agency must resolve disputed issues of fact properly before it. And, third, the parties must have had an adequate opportunity to litigate. *Id.* at 1033 (citing *United States v. Utah Constr. & Mining*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). Absent an "adequate opportunity to litigate," administrative findings are not entitled to preclusive effect in federal court. *See e.g. Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1283–84 (9th Cir.1986) (no preclusive effect afforded to informal unemployment benefits hearing because the plaintiff did not have an adequate opportunity to litigate factual issues).

The "threshold inquiry" in a preclusion analysis in federal court, therefore, is whether the *Utah Construction* requirements have been satisfied. *Miller*, 39 F.3d at 1033. In *Miller*, however, the court found that "California had already adopted the *Utah Construction* standard." Consequently, the court looked only at "State preclusion law" to determine if the Commission's findings precluded federal claims as well. *Id.* The court concluded that a "California court would have accorded the determination preclusive effect." *Id.* Because the administrative determination

was entitled to preclusive effect in California State courts, it was entitled to that same deference in federal court.

Based on *Miller*, Defendants here rely on California law to argue that the unreviewed determination of the Committee on Privilege and Tenure is entitled to preclusive effect in this action. Specifically, Defendants note that the California Supreme Court has recently held that the failure to challenge adverse administrative findings through a writ of administrative mandamus renders those findings binding in California courts. *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 99 Cal.Rptr.2d 316, 5 P.3d 874, 879 (2000).

*Loma Linda*, however, dealt with a different issue than that presented in *Miller* and presented here. In *Loma Linda*, a discharged city employee brought claims under California's Fair Employment and Housing Act (FEHA) and Title VII. The California Supreme Court held that the plaintiff's FEHA claim was barred by his failure to exhaust judicial remedies. Specifically, the court held that the failure to seek relief under § 1094.5 from an administrative determination "has the effect of establishing the propriety of" that decision. *City of Loma Linda*, 99 Cal.Rptr.2d 316, 5 P.3d at 880. As the *Loma Linda* concurrence pointed out, this holding was based on a procedural exhaustion requirement, not on the preclusive effect of the administrative decision. *Id.* at 887 (Werdegar J., concurring) (under the majority's holding "FEHA action was properly dismissed ... because [the plaintiff] omitted to fulfill a procedural prerequisite to bringing such an action").

The *Loma Linda* requirement of judicial exhaustion, however, is inapplicable in a § 1983 action brought in federal court. It is well established that a § 1983 plaintiff need not exhaust State remedies before bringing a federal civil rights claim.

*Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *see also Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 104, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) ("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked") (quoting *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). Plaintiff, therefore, had no obligation to pursue State remedies before seeking vindication of his rights pursuant to § 1983.

Defendants, in effect, conflate two distinct legal doctrines. The doctrine of "judicial exhaustion" articulated in *Loma Linda* does not apply to a section 1983 action in federal court. The doctrine of claim preclusion does apply. However, unreviewed administrative determinations, such as that of the Committee, will be given preclusive effect only when the fairness requirements of *Utah Construction* are met. *See Misischia v. Pirie,* 60 F.3d 626, 629 (9th Cir.1995) (findings of administrative agencies must satisfy both State requirements for preclusion and *Utah Construction* factors to have preclusive effect in federal court).

▪ In the present case, Plaintiff alleges that the Committee upheld his dismissal without affording him a hearing to prove the allegations contained in his grievance. For purposes of this motion, the Court accepts the allegation that the Committee on Privilege and Tenure reached its conclusion without testing any evidence through the adversarial process and without holding any hearing at all. It is this fact that distinguishes this case from *Miller* where the plaintiff was afforded a full evidentiary hearing, at which he was represented by counsel, presented evidence and called witnesses. *Miller,* 39 F.3d at 1032. Plaintiff here alleges that he was given none of these safeguards. This

procedure did not afford Plaintiff adequate opportunity to litigate and does not estop Plaintiff from bringing his § 1983 claim.

Defendants contend that despite the failings of the administrative proceeding, an adequate opportunity to litigate was afforded to Plaintiff by virtue of California's mandamus procedure. The question presented, therefore, is whether the mandamus proceeding of section 1094.5 provides "an adequate opportunity to litigate" within the meaning of *Utah Construction.*

Section 1094.5, however, does not provide an opportunity for Petitioner to present additional evidence in support of a writ. "The general rule is that a hearing on a writ of administrative mandamus is conducted solely on the record of the proceeding before the administrative agency." *Pomona Valley Hosp. Med. Center. v. Superior Court,* 55 Cal.App.4th 93, 63 Cal. Rptr.2d 743, 747 (1997); *Rapp v. Napa County Planning Com.,* 204 Cal.App.2d 695, 22 Cal.Rptr. 643 (1962) (in an administrative mandamus proceeding, the court's sole function is to determine from a review of the record whether there is sufficient evidence to sustain the administrative body's ruling). Where no administrative hearing was held, no testimony was taken and no evidence was presented (as Plaintiff alleges was the case here), review of the administrative record is insufficient to provide an adequate opportunity to litigate.

The inadequacy of this procedure is particularly clear when compared to those cases where courts have found that an administrative proceeding satisfied the requirements of *Utah Construction.* In *Misischia, supra,* for example, the Ninth Circuit held that a determination of the Hawaii Dental Board precluded the plaintiff from pursuing a section 1983 claim in federal court. The plaintiff had twice appealed the Board's decision that he failed the dental exam and could not practice

dentistry in Hawaii. Both of these appeals were accompanied by hearings. At one appeal, the plaintiff was represented by counsel who was permitted to make a presentation on his behalf. *Misischia*, 60 F.3d at 627–628; *see also Eilrich v. Remas*, 839 F.2d 630, 631 (9th Cir.1988) (giving preclusive effect to unreviewed administrative determination reached after fourteen day proceeding).

In addition to the two hearings held by the Dental Board, the plaintiff in *Misischia* also had "an opportunity ... for judicial review, and even for the presentation of evidence in the reviewing court to demonstrate procedural irregularities by the board." *Misischia*, 60 F.3d at 628. The plaintiff's failure to pursue this potential remedy was fatal to his claim. This procedure, however, differs considerably from the record review afforded by section 1094.5.

In fact, in *Mata v. City of Los Angeles*, 20 Cal.App.4th 141, 24 Cal.Rptr.2d 314, 319, the California Court of Appeal held that a "mandamus proceeding is technically not regarded as an action at all. It is, instead, described as a special proceeding" deserving of no preclusive effect. Based on the nature of the proceeding afforded by § 1094.5, the Ninth Circuit has held that even a final determination on a writ petition does not bar a section 1983 claim. "Because the state proceeding was a mandamus action, the ordinary claim preclusion rules that bar parties from relitigating claims already decided by courts on the merits do not apply here." *Honey v. Distelrath*, 195 F.3d 531, 533 (9th Cir.1999). In *Honey*, the district court dismissed a § 1983 action brought by a dismissed public employee. The district court held that the plaintiff's successful petition for a writ of administrative mandamus precluded her section 1983 claim for deprivation of procedural due process. The Ninth Circuit reversed, holding that the writ proceeding had no preclusive effect and reinstating the plaintiff's claim. 195 F.3d at 534.

In short, Plaintiff did not have an adequate opportunity to litigate his suspension through the administrative grievance procedure, and he was not required to challenge the Committee's determination through a writ of administrative mandamus. Because the writ procedure is effectively limited to the administrative record, it is an insufficient remedy when Plaintiff alleges that he was denied any opportunity to present his case at the administrative level. Although section 1094.5 may provide an adequate opportunity to challenge a procedurally flawed administrative hearing, it does not provide an adequate opportunity to challenge an administrative decision rendered without any process at all. Because Plaintiff had no adequate opportunity to litigate before either the Committee on Privilege and Tenure or the State court, the determination of the Committee does not satisfy the requirement for fairness set out in *Utah Construction*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642. It therefore does not have preclusive effect in this Court.

2. Wrongful Termination and California Constitutional Claim

Defendant Regents contends that Plaintiff failed to exhaust available administrative remedies with regard to his wrongful discharge and State constitutional claims as well. A claim of retaliatory discharge is a common law tort claim. *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330, 1335 (1980) ("a wrongful discharge suit exhibits the classic elements of a tort cause of action"). In *Rojo v. Kliger*, 52 Cal.3d 65, 276 Cal.Rptr. 130, 801 P.2d 373, 385 (1990), the California Supreme Court held that the exhaustion doctrine applies to "statutory right[s] and does not govern

rights and remedies outside the legislative scheme." Under *Rojo,* exhaustion of common law and constitutional claims will only be required where "the administrative agency possesses a specialized and specific body of expertise in a field that particularly equips it to handle the subject matter of the dispute." *Id.* at 386.

 In the present case, the Committee on Privilege and Tenure possesses no specialized knowledge regarding what constitutes the public policy of the State of California. Nor does it possess any expertise in determining when the discharge of an employee violates that employee's constitutional rights. Consequently, Plaintiff was not required to exhaust the grievance procedure contained in the Academic Personnel Manual before bringing his claims based on the Regents' alleged violation of public policy and deprivation of constitutional protections. *Leibert v. Transworld Systems, Inc.,* 32 Cal.App.4th 1693, 39 Cal. Rptr.2d 65, 72 (1995) ("[T]he rationale of the *Tameny* claim would be undermined if a violation of a fundamental public policy of the state had to remain unredressed simply because a plaintiff failed to pursue nonexclusive administrative remedies. Respondent advances no reason, and we discern none … why this nonstatutory, tort cause of action should be treated differently than other nonstatutory claims for purposes of application of the exhaustion doctrine.").

3. Breach of Contract

 Defendant Regents relies on *Edgren v. Regents,* 158 Cal.App.3d 515, 205 Cal.Rptr. 6 (1984) for the proposition that there is an exhaustion requirement for breach of contract claims against UCSF. In *Edgren,* the California Court of Appeal affirmed the dismissal of a complaint. That court concluded that the plaintiff's contract action was barred by his refusal to exhaust the Regents' internal grievance procedures. *Id.* at 11. The *Edgren* court also noted that once the plaintiff exhausted the internal grievance procedures, the proper means for obtaining review of the adequacy of the grievance proceedings was not a civil action, but rather an administrative mandamus proceeding under California Civil Code § 1094.5. *Id.*

Plaintiff contends that, unlike Edgren, he is not trying to enforce an employment contract against UCSF. Rather, his claim is that UCSF has failed to live up to its obligations under the terms of an NIH grant. As an alleged third party beneficiary of that contract, Plaintiff is bringing suit to enforce it.

Plaintiff contends that the existing UCSF grievance procedure is without jurisdiction to hear this type of dispute. *See Edgren,* 205 Cal.Rptr. at 6 (no exhaustion required "where the subject of the controversy lies outside the administrative agency's jurisdiction"). And, consequently, there is no administrative remedy available for this type of action.

Plaintiff is correct. There is no exhaustion requirement in an action to enforce a contract between UCSF and an unrelated third party. The existing grievance procedure is intended to resolve disputes between UCSF and its employees. The Committee on Privilege and Tenure that heard Plaintiff's grievance has no authority to adjudicate a breach of contract action between UCSF and the NIH. Indeed, it cannot be argued that NIH would have to exhaust any administrative remedies before bringing suit against UCSF for breach of contract. The allegation that there was a breach of UCSF's contract with NIH underlies Plaintiff's third party beneficiary claim. The UCSF administrative proceeding has no jurisdiction to resolve this question and Plaintiff, therefore, was not required to exhaust his administrative remedies before bringing this suit.

### D. Sufficiency of the Complaint

#### 1. Public Policy

▉ To plead successfully a claim of wrongful termination in violation of public policy, Plaintiff must show, at a minimum, "that he was terminated in retaliation for asserting his statutory rights." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 379 (1988). In his complaint, Plaintiff alleges that pursuant to California Government Code § 995, he requested that UCSF provide him with a defense in a civil suit in which Plaintiff was named as a defendant. He further alleges that in response to this request, Defendant Regents took numerous adverse employment actions against him, including threatening to terminate his employment, terminating his employment, and refusing to reinstate him after he met previously articulated conditions for reinstatement.

Defendant Regents contends that these allegations do not state a wrongful discharge tort claim for two reasons. First, the Regents argues that section 995 does not articulate a fundamental public policy of the state. *See Foley*, 254 Cal.Rptr. 211, 765 P.2d at 379 (statute at issue must "inure to the benefit of the public at large rather than to a particular employer or employee"). Therefore, any action taken against Plaintiff in response to his invocation of rights under this statute was not a tort. In addition, Defendant argues that Plaintiff has failed to allege a causal link between his assertion of his rights under § 995 and the alleged adverse employment action.

#### a) Section 995 articulates a public policy

▉ Section 995 requires that "upon request of an employee ... a public entity shall provide for the defense of any civil action or proceeding brought against him ... on account of an act or omission in the scope of his employment as an employ-

ee of the public entity." The purpose of the statutory provision is to encourage public employees to carry out their duties secure in the belief that if they are sued for doing so, their employer will provide a defense. *Johnson v. State of California*, 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352, 359 (1968) (section 995 assures the "zealous execution of official duties by public employees"). The benefit to the public flows from this purpose because it is in the public's interest for fire fighters, police officers, doctors and other State employees to carry out their critical public safety functions without fear of impending lawsuits.

#### b) Plaintiff has sufficiently alleged a causal link

▉ In his amended complaint, Plaintiff provides a chronology of the events that led to his dismissal and other adverse employment actions. This chronology alleges that Plaintiff's alleged invocation of his rights under Section 995 preceded the adverse employment actions. He adequately alleges that the actions were motivated, at least in part, by the exercise of his rights.

#### 2. Breach of Contract

▉ The California Civil Code provides for the enforcement of a contract by a third party who expressly benefits from the contract. "A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it." Cal. Civ.Code § 1559. A third party beneficiary may enforce a contract expressly made for his benefit although the contract may not have been made to benefit him alone. *Murphy v. Allstate Ins. Co.*, 17 Cal.3d 937, 132 Cal.Rptr. 424, 553 P.2d 584, 588 (1976).

▉ Plaintiff alleges that UCSF submitted a grant application to the NIH. He

contends that this was an offer to contract. The NIH accepted this offer by approving the grant. Plaintiff contends that he was a third party beneficiary of this contract because the grant contained funds specifically earmarked for Plaintiff's salary. Finally, although Defendant Regents "expressly agreed" to "administer the grant consistent with the application," the Regents violated the agreement when it failed to distribute to Plaintiff the NIH funding provided for him.

These allegations are sufficient to make out a claim for breach of contract enforceable by a third party beneficiary.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED (Docket # 36) and Plaintiff's request to remand is DENIED (Docket # 56).