**NORTH PACIFICA, LLC, Plaintiff,**

v.

**CITY OF PACIFICA, et al., Defendants.**

**No. C–01–4823 EMC.**

United States District Court, N.D. California.

April 28, 2005.

Jaquelynn C. Pope, Mark D. Warshaw, Hermosa Beach, CA, for Plaintiff.

Kevin Drake Siegel, Benjamin Louis Stock, Megan Holt Matthew, Michelle Marchetta Kenyon, Natalie Elsa West, Oakland, CA, Cecilia Quick, Pacifica, CA, Mark L. Armstrong, Patrick Joseph McMahon, Danville, CA, for Defendant.

ORDER DENYING DEFENDANT CITY OF PACIFICA'S MOTION TO DISMISS BASED ON CLAIM AND/OR ISSUE PRECLUSION

CHEN, United States Magistrate Judge.

Plaintiff North Pacifica LLC ("NP") filed suit against Defendant the City of Pacifica ("City" or "Pacifica"), alleging that the City violated NP's right to equal protection by imposing on NP's development project a condition of approval, known as Condition 13(b), that was more onerous than that imposed on similarly situated development projects. The Court bifurcated the trial on the equal protection claim into a liability phase and a damages phase. *See* Docket No. 198 (order, filed on 7/7/03). Because neither party had demanded a trial by jury, the action proceeded to a bench trial, with the liability phase beginning on July 28, 2003, and ending on August 1, 2003. On October 23, 2003, the Court issued findings of fact and conclusions of law on liability, determining that the City had violated NP's right to equal protection by imposing Condition 13(b) on NP's development project. *See* Docket No. 264 (order, filed on 10/23/03). The damages phase of the trial was scheduled to begin on February 7, 2005. As part of its pretrial filings for the damages phase, the City submitted a trial brief in which it argued that NP's lawsuit is barred by claim and/or issue preclusion.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and the supplemental briefs, the Court hereby DENIES the City's motion to dismiss based on claim and/or issue preclusion.

## I. *DISCUSSION*

### A. *Waiver of Preclusion Defense*

As a preliminary matter, the Court addresses NP's contention that the Court already considered and rejected the City's preclusion argument during the liability phase of trial. The Court does not agree. During the liability phase, the City did raise the matter of issue preclusion in a motion in limine, *see* Docket No. 185 (City's Motion in Limine No. 1, filed on 7/2/03); however, the argument in that motion was different from the argument now presented to the Court.

In the prior motion in limine, the City argued that NP was precluded by the doctrine of collateral estoppel from challenging the constitutionality of Condition 13(b) because a state court had previously held that NP failed to challenge the conditions of approval, including Condition 13(b), within the statute of limitations. *See* Liability Ex. P (order of San Mateo County Superior Court in Case No. 429148, filed on 6/20/03). Now, the City contends that there is preclusion-claim preclusion as well as issue preclusion—not based on the state court decision but rather based on the decision of the City Council to approve Condition 13(b), which NP failed to challenge via an administrative writ. In support of this argument, the City relies on the Ninth Circuit case *Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir.1994), and its progeny. In *Miller*, the Ninth Circuit concluded that, where a state agency acts in a judicial capacity to resolve disputed issues of law and fact properly before it, and the parties have had an adequate opportunity to litigate those issues, a federal court must give the state agency's fact-finding and legal determinations the same preclusive effect that they would have if they were litigated in state court.[1] *See Miller*, 39 F.3d at 1032–33.

1. Pursuant to 28 U.S.C. § 1738, federal courts are required to give preclusive effect to state

Although the Court concludes that it did not, as argued by NP, previously address the *Miller* preclusion argument, it finds that the City's failure to raise the argument until now is not without consequences. As noted above, the City previously argued preclusion at the liability phase based on a prior state court decision. After the Court rejected this particular preclusion argument, the City never at any point during the liability proceedings made another preclusion argument. Moreover, after the Court's liability decision on October 23, 2003, the City never moved for summary judgment on the basis of any preclusion defense even though it twice sought dismissal of the suit on other grounds. *See, e.g.,* Docket No. 283 (City's motion to dismiss or, in the alternative, for summary judgment on damages, filed on 2/11/04); Docket No. 389 (City's request for immediate stay, filed on 12/23/04). The first time that the City brought the *Miller* preclusion argument to this Court was with its trial brief for the damages phase of the case, which was filed only a few weeks before the damages trial was scheduled to begin. *See* Def.'s Trial Br. at 11–17.

Given the above circumstances, the Court agrees with NP that the City's delay led NP—as well as the Court—to believe that the issue of preclusion was resolved and no longer at issue in this case. In other words, because the City failed to raise the *Miller* preclusion argument until now, there has been unfair surprise to NP. *Cf. Boston Sci. Corp. v. Schneider (Eur.) AG,* 983 F.Supp. 245, 254 (D.Mass.1997) (in discussing whether defendant waived a preclusion argument because of a failure to assert the defense in the answer, addressing whether plaintiff was unfairly surprised and unduly prejudiced by late assertion of preclusion argument at summary judgment).

Moreover, case law indicates that a party who "delay[s] too long" in asserting a preclusion argument may lose the defense. 18–131 Moore's Fed. Prac.—Civ. § 131.50[1] (discussing whether defendant waives preclusion argument because of a failure to assert the defense in the answer, noting that a defendant who "delay[s] too long in asserting claim or issue preclusion may lose the defense"). For example, in *Kern Oil & Refining Co. v. Tenneco Oil Co.,* 840 F.2d 730 (9th Cir.1988), the defendant argued that the plaintiff was barred by res judicata from proceeding with its case, but the Ninth Circuit disagreed because the defendant had delayed in raising the argument. The court noted first that the defendant had failed to raise the preclusion defense in its original answer to the plaintiff's complaint. *See id.* at 735. Although the court in other cases had "allowed a party to raise res judicata after the initial pleadings by construing the attempt as a motion to file a supplemental answer, . . . we have always required that it be raised before trial." *Id.* Here, the defendant did not make the preclusion argument until *after* the end of the trial— more specifically, until seven months after the lower court ruled in the plaintiff's favor on liability. *See id.* at 735 & n. 2. The Ninth Circuit also emphasized that the defendant failed to make the preclusion argument even though the prior court proceeding to which the defendant attributed preclusive effect was decided two years earlier. *See id.*

The Court finds *Kern Oil* persuasive. Although the instant case is arguably dif-

court judgments. While § 1738 does not apply to administrative agency decisions that have not been first reviewed by a state court, the Supreme Court has "frequently fashioned federal common-law rules of preclusion in the absence of a governing statute." *University of Tenn. v. Elliott,* 478 U.S. 788, 794, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

ferent from *Kern Oil* to the extent that the City listed preclusion as an affirmative defense in its answer, its allegation was conclusory and failed to provide clear notice of the particular nature of the preclusion argument now advanced. More fundamentally, the reasoning in *Kern* is still applicable—*i.e.*, that undue delay should not be rewarded. Like the defendant in *Kern Oil*, the City failed to assert the preclusion argument until months after the liability decision was made-indeed, until more than a year after the liability decision.[2] Further, like the defendant in *Kern Oil*, the City did not argue preclusion until more than a year after the earlier proceeding to which it attributed preclusive effect.[3] Notably, the City has never tried to justify its delay or explain why it could not have moved for *Miller*—based preclusion earlier, *e.g.*, when it moved for preclusion during the liability phase on the basis of the prior state court decision.

■ Given the unfair surprise to NP and the undue delay by the City, the Court finds it appropriate to deem the *Miller* preclusion argument waived. This conclusion is buttressed by the purposes underlying the preclusion rules, namely, "conserving judicial resources and protecting parties from 'the expense and vexation' of relitigating issues that another party previously has litigated and lost." *Harvey v. United Transportation Union*, 878 F.2d 1235, 1243 (10th Cir.1989); *see also Disimone v. Browner*, 121 F.3d 1262, 1267 (9th Cir.1997) ("The purposes of preclusion doctrines are to 'conserve judicial resources, protect litigants from multiple lawsuits, and foster certainty and reliance in legal relations.' "). In this case, because the City did not assert the *Miller* preclusion de-

fense until after the liability phase was completely litigated and until the trial on damages was just about to begin, allowing the City to make the preclusion argument does nothing to vindicate either purpose. A vast amount of judicial resources, not to mention NP's resources, have already been expended. Thus, the City's delay not only works an unfair surprise upon NP, it undermines the purposes underlying the preclusion rules by wasting resources of the parties and the Court, thereby prejudicing NP.

### B. *Merits of Preclusion Defense*

Even if the Court did not find a waiver of the *Miller*—based preclusion defense by the City, the City would be no better off because the defense fails on the merits.

■ As noted above, the City argues for both claim preclusion and issue preclusion based on the Ninth Circuit's opinion in *Miller*. However, in *Miller*, the Ninth Circuit emphasized that, whether based on claim or issue preclusion, "unreviewed findings of a state administrative tribunal are entitled to preclusive effect in a subsequent § 1983 action in federal court" only if the fairness requirements of *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), are met, namely "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." *Miller*, 39 F.3d at 1032–33; *see also Utah Constr.*, 384 U.S. at 422, 86 S.Ct. 1545 ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an

---

**2.** As noted above, the Court issued its findings of fact and conclusions of law on October 23, 2003. The City did not present the *Miller* preclusion argument until January 18, 2005.

**3.** The City Council made its decision regarding NP's permits on August 12, 2003.

adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."). The thrust of the *Utah Construction* factors is to ensure that the "administrative proceeding was conducted with sufficient safeguards 'to be equated with a state court judgment' " entitled to preclusive effect. *Miller,* 39 F.3d at 1033; *see also University of Tenn.,* 478 U.S. at 798, 106 S.Ct. 3220 (" 'Where an administrative forum has the essential procedural characteristics of a court, ... its determinations should be accorded the same finality that is accorded the judgment of a court.' ").

In *Plaine v. McCabe,* 797 F.2d 713 (9th Cir.1986), the Ninth Circuit determined that a hearing held by the California Corporations Commissioner "was conducted similarly to a court proceeding" and so satisfied the *Utah Construction* test. *Id.* at 720. For example, the hearing

> was an adversary proceeding in which opposing parties were present and represented by counsel and were allowed to call, examine, cross-examine, and subpoena witnesses. Under the applicable sections of the California Administrative Code, testimony was to be submitted under oath or affirmation and a verbatim transcript was required. The parties received a written decision setting forth the Commissioner's reasons for [the decision].

*Id.* Similarly, in *Eilrich v. Remas,* 839 F.2d 630 (9th Cir.1988), the Ninth Circuit determined that a hearing met the *Utah Construction* requirements as it resembled a trial: "[B]oth sides were entitled to call, examine and cross-examine witnesses under oath or affirmation. At the hearing, both parties were represented by counsel, twenty-one sworn witnesses testified, subpoenas were issued, and both parties presented oral argument and written memoranda." *Id.* at 634.

In contrast, in *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279 (9th Cir. 1986), the Ninth Circuit found that the *Utah Construction* test was not satisfied. "[B]ecause of the nature of the proceedings, the parties did not have an adequate opportunity to litigate Mack's age discrimination claims before the Unemployment Insurance Appeals Board. The ALJ made no specific findings concerning Mack's age discrimination claim and the record does not disclose whether evidence was ever presented on the issue." *Id.* at 1283–84. Likewise, in *Guru Nanak Sikh Soc'y of Yuba City v. County of Sutter,* 326 F.Supp.2d 1128 (E.D.Cal.2003), the district court determined that the requirements of *Utah Construction* were not met: "It is true that prior to *Miller,* the Ninth Circuit accepted the parties' agreement that claim preclusion could apply to review of a land use application by a county board of supervisors. Here, however, defendants have made no effort to show that any of the three *Utah Construction* fairness requirements were met in proceedings before the Board and, in any event, the allegations of the complaint do not suggest that they were." *Id.* at 1134.

The City argues that, in the instant case, NP had "ample" opportunity to litigate the matter of Condition 13(b) at the administrative hearings before both the Planning Commission and the City Council, noting that NP was represented at both hearings by Mr. Fromm, who is not only a member of NP but also an attorney. Def.'s Trial Br. at 16. The City also claims that NP could have not only argued its case regarding Condition 13(b) at the hearings but also presented evidence.

■ The Court, however, is not persuaded that the administrative proceedings before the Planning Commission and the City Council " 'ha[d] the essential procedural characteristics of a court [such that

their] determinations should be accorded the same finality that is accorded the judgment of a court.'" *University of Tenn.,* 478 U.S. at 798, 106 S.Ct. 3220. Although NP was given some time to present an oral argument at the City Council hearing of August 12, 2002, nothing in the record establishes that NP could have presented evidence or subpoena, call, or cross-examine witnesses under oath. *Cf. Pacific Lumber Co. v. California State Water Resources Control Board,* 116 Cal.App.4th 1232, 1249, 11 Cal.Rptr.3d 378 (2004) (stating that, before administrative decision may be given preclusive effect, administrative proceeding must be "evaluated to determine whether it is sufficiently judicial in nature to support an estoppel"; concluding that California Department of Forestry's approval of timber harvest plan lacked judicial characteristics because there was no adversarial proceeding, testimony was not submitted under oath, there was no opportunity to call or cross-examine witnesses, subpoena witnesses, or present oral argument). Nor could NP have subpoenaed documents in the hands of the City material to its constitutional equal protection claim. The City Council hearing on the permits bore no resemblance to the adjudicatory process before this Court in addressing the equal protection claim. Material evidence presented to the Court in this case included internal documents and testimony pertaining to how NP was treated compared to other similarly situated developers, the reason the joint and severability language was inserted, and the possible rationale for Condition 13(b). The City Council did not and could not reasonably have been expected to marshal such evidence and apply legal analysis to NP's constitutional claim. Rather, its focus was on land use concerns vis-a-vis, *e.g.,* the City's General Plan and other applicable ordinances.

The fact that NP could have appealed the administrative decisions of the Planning Commission and the City Council to a state court (via an administrative writ) does not mean that NP was thereby given an adequate opportunity to litigate as required by *Utah Construction.* Although in *Wehrli v. County of Orange,* 175 F.3d 692 (9th Cir.1999), the Ninth Circuit stated that "'the issue of a "full and fair" opportunity to litigate includes the possibility of a chain of appellate review,'" *Id.* at 695 (quoting *Crossroads Cogeneration v. Orange & Rockland Utils., Inc.,* 159 F.3d 129, 137 (3d Cir.1998)), the court did not hold such a possibility is sufficient to render an otherwise inadequate opportunity into one which satisfies *Utah Construction.* Rather, *Wehrli* simply stands for the converse proposition that, without the procedural safeguard of appellate review, there could be no full and fair opportunity to litigate as required by *Utah Construction.*

In any event, in the instant case, the possibility of a mandamus proceeding did not in fact give NP an adequate opportunity to litigate the equal protection question. Judge Wilken's decision in *Embury v. King,* 191 F.Supp.2d 1071 (N.D.Cal.2001), is illuminating in this respect. There, the plaintiff argued that he was denied an adequate opportunity to litigate because a committee made the decision to fire him "without testing any evidence through the adversarial process and without holding any hearing at all." *Id.* at 1083. The defendants asserted that, "despite the failings of the administrative proceeding, an adequate opportunity to litigate was afforded ... by virtue of California's mandamus procedure." *Id.* (citing California Code of Civil Procedure § 1094.5). But, as Judge Wilken explained, under § 1094.5, "'[t]he general rule is that a hearing on a writ of administrative mandamus is conducted solely on the record of the proceeding before the administrative

agency.'" *Id.* "Because the writ procedure is effectively limited to the administrative record, it is an insufficient remedy when Plaintiff alleges that he was denied any opportunity to present his case at the administrative level." *Id.* at 1084. While the circumstances in *Embury* are more severe than those in the instant case (*i.e.,* in *Embury,* no administrative hearing was held at all), the reasoning of the case is still applicable to the case at bar. NP was not given the opportunity to have a "full evidentiary hearing" at the administrative level—*e.g.,* to present evidence, to cross-examine witnesses, subpoena documents, and so forth. *Id.* at 1083. Nor did the administrative writ procedure governed by § 1094.5 give NP the opportunity to have a full evidentiary hearing because the procedure limited NP to the already established administrative record.

The Court acknowledges that augmentation of the administrative record is possible under California law, but this is true only in limited circumstances. *See Pomona Valley Hosp. Med. Ctr. v. Superior Court,* 55 Cal.App.4th 93, 101, 63 Cal. Rptr.2d 743 (1997) (noting that augmentation of an administrative record is permitted "only within the strict limits set forth in section 1094.5, subdivision (e)"). Under § 1094.5(e),

> Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case.

Cal.Code Civ. P. § 1094.5(e). Given this restriction on evidence and the limited nature of City Council hearings on permit approvals, an administrative writ proceeding cannot even with remand convert a City Council hearing on NP's permit into a full and fair adjudication of its constitutional claim so as to satisfy *Utah Construction.* Thus, because the *Utah Construction* factors have not been satisfied, the City's preclusion argument must fail.

The Court also rejects the City's preclusion argument for an additional reason. *Miller* was predicated on the fact that the plaintiff therein *chose* to have his claim heard by an administrative agency and thus was bound to the determination made when he did not seek appellate review thereof. In *Miller,* the plaintiff was employed by a county sheriff's department for some eight years but was terminated after several disciplinary actions. *See Miller,* 39 F.3d at 1031. The plaintiff was not required to but made the election to contest his dismissal before the county's Civil Service Commission. *See id.* The Ninth Circuit emphasized: "California has made it quite clear that a discharged civil servant who *elects* an administrative forum for review of his or her termination must succeed in *overturning* that administrative decision through the judicial mandamus review procedure prior to filing a suit for damages on claims arising out of the termination." *Id.* at 1038 (emphasis in original).

This element of choice was key to the Ninth Circuit's holding. The court pointed out that, under *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the plaintiff was not required to exhaust his administrative remedies before he could file suit under § 1983. *See id.* at 501, 102 S.Ct. 2557 (stating that "exhaustion [of state judicial or administrative remedies] is not a pre-

requisite to an action under § 1983"). However, "[n]o exhaustion requirement has been imposed on Miller. It is Miller's election to pursue his claim initially in an administrative forum, and to forego his right to seek judicial review in state court, which requires us to determine whether that decision is binding on all that was, or could have been, determined there." *Miller,* 39 F.3d at 1034 n. 3. Thus, under *Miller,* if a party chooses to take an administrative route, then it must pursue that route to its ultimate conclusion or else be precluded. However, a party cannot be forced to follow the administrative route and then have that administrative determination preclusive of any federal court suit lest effectively circumventing the Supreme Court's holding in *Patsy.*

In the instant case, after the Planning Commission approved NP's permits subject to, *inter alia,* Condition 13(b), NP did have the choice between seeking relief through an administrative process (*i.e.,* an appeal to the City Council) or through an alternative route (*i.e.,* a civil action in federal court). NP was never given the chance to exercise that choice. Instead, John Curtis, an individual opposed to the project, initiated the administrative process on his own by filing an appeal of the Planning Commission's decision with the City Council. Because Mr. Curtis and not NP made the decision to pursue the administrative route, NP cannot be charged with the consequences of exhausting that administrative route and then being held to its preclusive effect which would essentially bar a federal court action. Absent NP's exercise of a choice in voluntarily seeking relief through the administrative process, NP's access to the federal court cannot be barred by the doctrine of preclusion. *See Patsy,* 457 U.S. at 503–04, 102 S.Ct. 2557 (noting that " '[the] very purpose of § 1983 was to interpose the federal courts between the States and the people,

as guardians of the people's federal rights' " and that Congress "intended § 1 [the precursor to § 1983] to 'throw open the doors of the United States courts' to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights, and to provide these individuals immediate access to the federal courts notwithstanding any provision of state law to the contrary").

## II. CONCLUSION

For the foregoing reasons, the Court concludes that the City has waived the *Miller* preclusion defense and that, even if the defense were not waived, on the merits, NP is not precluded from seeking damages for the equal protection violation at issue. Accordingly, to the extent the City has asked the Court to dismiss NP's suit based on claim and/or issue preclusion, the motion is denied.

IT IS SO ORDERED.